MARVIN, Judge.
In this declaratory action we affirm a judgment declaring that retirement under the judges’ contributory retirement plan (LRS 11:558, as amended by Act 1063 of 1991) is “regular retirement” within the meaning of DROP (the deferred retirement option plan in LRS 11:447, as amended by Act 14 of 1990), and that the DROP option shall be made available to the plaintiff judge, who is a member of LASERS (Louisiana State Employees’ Retirement System).[1]
Plaintiff’s answer to the appeal seeks to amend the judgment by further declaring that plaintiff’s written notification of November 18,1991, to LASERS of his election to exercise the DROP option is timely and shall be implemented and given legal effect by LASERS. We amend in this respect and affirm, as amended.
PREFACE
The judges’ contributory retirement plan, originally enacted in 1976 into LRS Title 13, *1354 will be hereafter referred to as the Judges’ plan. LASERS, originally enacted before 1976 into LRS Title 42, will be referred to as the LASERS plan. A 1990 act combined these Titles and other legislatively created retirement systems into LRS Title 11.
LASERS’ CONTENTIONS
LASERS argues here, as it did below, that the DROP plan (Act 14 of 1990, now LRS 11:447-451) is available only to a “member” of the LASERS plan who meets the specific age and years-of-service qualifications in LRS 11:441 A (formerly LRS 42:571 A).
LASERS contends that its “implementation” of the DROP plan is in accord with its statutory duty to administer the LASERS retirement plans, “based on actuarial design,” and is not arbitrary, capricious or unreasonable. LASERS further suggests that the interpretation urged by the plaintiff and adopted by the trial court “redesign[s] the plan and changes its implementation — functions which are [exclusively those of] the legislative and executive branches.”
LASERS argues that the trial court’s interpretation of DROP effectively renders the DROP plan actuarially unsound, contrary to the principle stated in LSA-Const. Art. 10, § 29, and results in “special treatment” for judge-members of LASERS.
JUDGES’ RETIREMENT BEFORE AND AFTER LASERS AND DROP
Retirement benefits for state judgés were originally of constitutional origin, solely funded by the state. LSA-Const. 1921, Art. VII, § 8, as amended. The current constitution, Art. 5, § 23(A), mandated the legislature to provide a retirement system for judges. This was accomplished by Act 518 of 1976, amending former Title 13, which afforded judges then sitting the option of joining and contributing to the LASERS plan. Judges elected after the 1976 act are required to become members of LASERS.
LRS 11:413 (formerly LRS 42:553 of the LASERS plan) lists 13 “classes of employees and officers” who are ineligible to become members of LASERS. Those in the first class of those ineligible for LASERS are “officials or employees ... of any other state retirement system ... unless by transfer ... provided for by this Chapter.” Those in the ninth ineligible class are “Judges and court officers in office on October 2, 1976, who did not timely exercise their option to become members.”
The plaintiff judge became a judge-member of LASERS whose eligibility requirements for retirement were and are set forth in former LRS 13:16, now LRS 11:558, which derived from Act 518 of 1976.
The LASERS plan, and particularly LRS 11:441 A and 444 A, preceded Act 518 of 1976 and the DROP plan, being derived from much earlier legislation enacted over several decades that stated the eligibility requirements for retirement of members of LASERS long before sitting judges became eligible to join LASERS in 1976. See Historical and Statutory Notes, § 441, West’s LSA Special Pamphlet, 1992. LRS 11:444 A, for instance, sets the “maximum retirement allowance” for “a member who retires effective July 1, 1973 and thereafter
While the sections of the LASERS plan and the sections of the Judges’ plan should be construed together with DROP, enacted in 1990, no single section of the prior law should control interpretation of more recent legislation. C.C. Art. 13.
LASERS’ contention also fails to distinguish the statutory percentage of contributions, the age and service requirements, and the retirement benefits legislatively provided for judge-members of LASERS from the requirements and benefits legislatively provided for non-judge members of LASERS.
The legislature has made the distinction between some LASERS plan members sometimes in LASERS legislation or in oth *1355 er legislation such as in the Judge’s plan, Act 518 of 1976. Compare subsections D and E with subsection A of LRS 11:441.
The distinction between non-judge and judge members of LASERS has been consistently recognized judicially, notwithstanding LASERS’ contentions and arguments to the contrary in other contexts, in cases where sections in former Title 42 (the LASERS plan) and Title 13 (the Judges’ plan) had to be compared and interpreted. We emphasize some of these sections:
Except as otherwise provided in Act 518 of 1976, the Judges’ plan, the provisions of the LASERS plan shall be applicable to judge-members of LASERS. LRS 11:571 (formerly LRS 13:26). Any judge-member of LASERS shall be vested with all the benefits, emoluments and conditions of LASERS and also with the additional benefits provided by the Judges’ plan. LRS 11:568 (formerly LRS 13:24).
A judge-member of LASERS may avail himself of all the benefits of the LASERS plan (former LRS Title 42) and of all benefits of the Judges’ plan (former LRS Title 13). LRS 11:554 (formerly LRS 13:14).
Effectively [the above-cited statutory authority] means that a [judge-member of LASERS] can retire under [Title 42, the LASERS plan] and receive the benefits of [Title 13, the Judges’ plan]. The reverse is also true; a person covered by the [Judges’ plan] could retire under [Title 13] and ... receive benefits as provided in Title 42, if they are more advantageous than those otherwise afforded. The best combination of both systems [the LASERS plan and the Judges’ plan] is available to the [judge-member of LASERS] .... [B]y the enactment of the [Judges’ plan], the legislature provided for a combination of retirement eligibility requirements and a combination of retirement benefits [for judge-members of LASERS].
Moise v. La. State Emp. Ret. System, 366 So.2d 1054, 1058 (La.App. 1st Cir.1978), writ denied. Our emphasis and brackets.
See also Boyd v. La. State Employees’ Ret. System, 453 So.2d 243 (La.App. 1st Cir.1984), writ denied.
Similarly, LASERS’ suggestion about possible actuarial unsoundness has been urged by LASERS and other state retirement systems in other contexts and rejected in the light of the above-cited and other sections of the law which are now incorporated into Title 11. See: Boyd, supra; Maillet v. Board of Trustees, Teachers’ Retirement System, 248 La. 964, 183 So.2d 321 (1966); Swift v. State, 342 So.2d 191 (La.1977); and Groves v. Board of Trustees of Teachers’ Retirement System, 324 So.2d 587 (La.App. 1st Cir.1975), writ denied.
[There is] no merit in the argument that [Groves’] inclusion will erode benefits due other members of the State System and place financial soundness of the State System in jeopardy. The soundness of such a system is a matter of legislative discretion ... Presumably the legislature shall make whatever contribution [is] required to guarantee benefits payable to any member, ... as mandated by [LSA-Const. Art. 10, § 29].
Groves, supra, 324 So.2d at 594-5.
Nothing in the LASERS plan before DROP excluded a judge-member of LASERS from benefits of the LASERS plan more advantageous to him than provided by the Judges’ plan. Moise and Boyd, cited supra, recognized the distinction between a judge-member of LASERS and other members and clearly held that a judge-member of LASERS may claim whatever combination of retirement eligibility requirements and benefits that are the most advantageous to him in either or both the Judges’ plan and the LASERS plan, e.g., retirement under the Judges’ plan and benefits under the LASERS plan, or vice versa.
RELATIONSHIP OF DROP (in the LASERS plan) WITH ACT 1063 OF 1991 (in the Judges’ Plan)
DROP (Act 14 of 1990, now LRS 11:447-451), entitled “Deferred Retirement Option Plan,” states in its first section (§ 447):
*1356 A. In lieu of terminating employment and accepting a retirement allowance, any member of this system who has been eligible for regular retirement for at least one year may elect to participate in [DROP]
[[Image here]]
B. For the purposes of this section, “regular retirement” shall not include retirement under any early retirement incentive or similar plan.
Before DROP, the “Eligibility for retirement” of the plaintiff judge-LASERS member was set forth in the former LRS 13:16 (now LRS 11:558).
LRS 13:16 was amended after DROP, by Act 1063 of 1991. The 1991 act added to the class of judges who were eligible to retire and granted additional retirement credits for years of service other than in a judgeship to judges within that class, by generally providing that a judge serving on a court found to be in violation of the federal voting rights law shall be allowed to retire at the end of his service in office regardless of his age and years of service, provided he does not seek reelection or election to another judicial office.
The retirement credits that are now legislatively provided in LRS 11:558 for a judge-member of LASERS are for his years of service as a judge, plus lesser respective credit for his years of service in the legislature, in a prosecutorial position, and for up to four years in military service. Cf. Boyd, supra.
LASERS concedes that the retirement plan for a judge-member after Act 1063 of 1991 (now LRS 11:558) is not an “early retirement incentive or similar plan” as that phrase is distinguished from “regular retirement” in LRS 11:447.
LASERS does not disagree that the plaintiff judge, who was born in 1937 and who has continuously served as a judge since 1966, became eligible to retire in 1987 as a judge-member of LASERS under the provisions of LRS 11:558 (former LRS 13:16) when he reached 50 years of age and attained 20 years of creditable service. In 1987 the plaintiff-judge attained 21 years of creditable service and reached age 50.
LRS 13:16 A and B (now in LRS 11:558) then read:
Eligibility for retirement [of judge-members of LASERS] under this Part shall be as follows:
A. (1) Any person covered by this Part who elects to become a member of [LASERS] and who ...
(2) Upon attaining a total of twenty years of creditable service, at least twelve years of which were as a judge or court officer, any such person shall be entitled to retire if he has attained the age of fifty years.
(3) Upon attaining a total of at least twelve years of creditable service as a judge or court officer, any such person shall be entitled to retire when he attains the age of fifty-five years.
(4) Upon attaining the age of seventy years any such person shall be entitled to retire hereunder without regard to the number of years of creditable service as a judge or court officer.
B. Any person who retires under the provisions of Subsection A hereof shall receive the full retirement benefit, without reduction of any percentage which may be provided in the laws pertaining to the retirement system for retirement before the normal retirement age, ...
Our emphasis and brackets.
Like the term “regular retirement” in DROP, the term “normal retirement age” in the Judges’ plan is not specifically defined in the respective statute.
We shall follow the legislative direction for interpreting the law and construe each term in the respective statute according to its “generally prevailing meaning” in “common and approved usage” (C.C. Art. 11; LRS 1:3) in the light of the obvious purpose of the statute and the statutory retirement eligibility requirements. C.C. Art. 10.
*1357 Regular, by dictionary definition, means that which is ordered by some established rule, law, principle, or type. Normal, similarly defined by dictionary, means according to, or not deviating from, a norm, rule, or principle.
In 1987 the plaintiff judge reached a “normal retirement age” and met the service requirements for “regular retirement” for a judge-member of LASERS that were established in 1976 in LRS 13:16 A, before DROP, notwithstanding that he did not then meet the LASERS plan age and years-of-service retirement requirements for non-judge members of LASERS in LRS 11:441 A (formerly LRS 42:571 A), the section which LASERS argues in this appeal.
Before and after DROP, the eligibility requirements for retirement of a non-judge member of LASERS were as follows:
Any member shall be eligible for retirement if he has:
(1) Thirty years or more of service, at any age.
(2) Twenty-five years or more of service, at age fifty-five or thereafter.
(3) Ten years or more of service, at age sixty or thereafter.
LRS 11:441 A, formerly LRS 42:571 A.
In Moise, supra, the plaintiff met the age and service eligibility requirements to retire under the LASERS plan, but not under the Judges’ plan. LASERS unsuccessfully contested Moise’s privilege of retiring under LASERS and claiming benefits under the judge’s plan.
Moise clearly said the “best combinations” of both systems, retirement eligibility requirements and retirement benefits, were available to that plaintiff. LASERS argues that DROP does not create or “establish” a “benefit5” but provides a “means whereby a benefit [created elsewhere in the statutes] may be received, [explaining that] the benefit to which [the plaintiff-judge] is entitled ... will be the same whether he participates in DROP or not.”
LASERS’ argument, summarized in the above paragraph, is semantical and is contrary to §§ 448-450 of DROP. For the DROP plan participant, these sections effectively provide that for two years the retirement amount, which would have been paid the participant had he not continued working, would be accumulated in a sub-account and “upon termination ... in both [DROP] and employment, ... shall ...” be paid to the participant either in a lump sum or systematic disbursement approved by the LASERS board. By whatever “name” LASERS would call what DROP provides for those who choose to participate (whether benefit, or method or means of receiving a benefit), the “smell” of the name would be as “sweet” to the optionee who chooses to participate.
We hold that the best combinations of both systems, age and service eligibility requirements and benefits or choices, became available to the plaintiff judge-member of LASERS in 1987, before DROP was enacted in 1990. Similarly, after DROP, the plaintiff-judge member of LASERS was privileged to exercise the DROP option.
Nothing in DROP in 1990 directs a contrary result. DROP clearly states that “in lieu of ... accepting a retirement allowance, any member this system who has been eligible for regular retirement for at least one year may elect to participate in the deferred retirement option plan.” LRS 11:447. When DROP was enacted in 1990, the plaintiff judge-member of LASERS had fulfilled the statutory requirements for “regular retirement” by attaining a “normal retirement age” and years of service in 1987. When Act 1063 of 1991 added extra credit for judge-members of LASERS in LRS 13:16 A, the plaintiff judge became eligible for those extra credits and resulting retirement benefits.
ACT 1063 OF 1991
This act amended the former LRS 13:16 by adding to part A subsections 5(a), 5(b) and 5(c) to allow a judge-member of LASERS retirement credit for service other than as a judge in the specified areas we *1358 have mentioned above. Extra retirement credit and maximum benefits to a judge-member of LASERS for service other than as a judge have been given effect as service as a judge, notwithstanding LASERS’ contention to the contrary. Boyd, supra, another illustration of the statutory distinction between a judge-member of LASERS and “any [non-judge] member” of LASERS.
Thus we agree with the trial court that retirement under LRS 11:558 (which incorporates with the former LRS 13:16, as amended by Act 1063 of 1991) is "regular retirement” for a judge-member of LASERS within the meaning of Act 14 of 1990 (the DROP plan, now LRS 11:447-451). Act 518 of 1976, as amended, now LRS 11:558.
CONCLUSION
This appeal questions the trial court’s interpretation of statutes enacted and amended by the legislature. LASERS states that it has made no “interpretation,” but is merely “implementing” the DROP plan as it is statutorily mandated to do. LASERS, as an administrative body, agrees that it has not made factual findings or discretionary interpretive conclusions as to the plaintiff judge, but has stipulated the basis of its contentions in response to plaintiff’s declaratory action.
In reviewing the declaratory judgment, we are not required to grant deference to LASERS’ “implementation” of the statutes. See and compare Hall v. State through Dept. of Public Safety, 474 So.2d 540 (La.App. 3d Cir.1985) and Hay v. South Cent. Bell Telephone Co., 475 So.2d 1052 (La.1985).
We have reviewed LASERS’ position or “implementation” of the statutes which is in pamphlet form attached to its brief, although not formally in the record. LASERS' arguments in brief and in its pamphlet do not persuade us to an interpretation contrary to the statutes and authorities we have discussed and cited.
The well-written and supported reasons for judgment assigned by the trial court correctly discusses and applies those authorities and statutes. We adopt, as herein supplemented and summarized, the trial court’s reasons.
DECREE
We amend the judgment to decree that plaintiff’s exercise of the DROP option by written notification to LASERS on November 18, 1991, is a timely exercise of the option which shall be implemented and given legal effect by LASERS.
At LASERS’ cost to the extent that the law allows, the judgment, as amended, is AFFIRMED.

. Plaintiffs colleagues on the First Circuit have recused themselves in this appeal. The appellate judges from other circuits assigned ad hoc by the supreme court to consider this appeal:
Chief Judge Charles A. Marvin, Second Circuit, Judge J. Burton Foret, retired, Third Circuit, and Judge Charles Grisbaum, Jr., Fifth Circuit,
are not members of LASERS, as is the plaintiff. The assigned ad hoc judges are not eligible to participate in DROP. Their retirement eligibility and benefits under the pre-1976 judges’ retirement system (now LRS 11:1351-1384) are unaffected by this opinion.