1 ¡¿PARRO, J.
Seven members of the Louisiana judiciary filed suit, seeking a declaratory judgment that the Trustees of the Louisiana State Employees’ Retirement System (LASERS) had misinterpreted the law as it applied to the computation of their retirement benefits. The district court granted summary judgment in favor of LASERS and denied the plaintiffs’ motion for summary judgment, dismissing their case. This appeal followed. Having reviewed the applicable law, we affirm.
BACKGROUND
To facilitate the settlement of a lawsuit filed against the State of Louisiana under the federal Voting Rights Act, and to create vacancies in the state judiciary that could potentially be filled by minority judges, the Louisiana legislature passed Act 1063 of 1991, now designated as LSA-R.S. H^SIA)©.[1] Under this legislation, incumbent judges who met the stated eligibility requirements were offered enhanced retirement benefits as an inducement not to seek reelection or election to any other *698 judicial office. The plaintiffs in this suit, Jacob L. Karno, Philip C. Claccio, H. Charles Gaudin, Anthony J. Graphia, John Roy Joyce, Patrick M. Schott, and Fred C. Sexton, Jr. (the Judges), qualified for retirement under this legislation. They agreed not to seek reelection or any other judicial office in exchange for the enhanced retirement benefits provided by Act 1063.
The retirement system available to judges also includes a program known as the Deferred Retirement Option Plan (DROP). LSA-R.S. 11:447-51. Under this plan, a member choosing to enroll in DROP is considered by the retirement system to be in a retired status for a period of up to three years after enrollment. LSA-R.S. 11:447(0) and 448(A). During this time, he continues to work and earns his regular salary, but also accumulates money in an individual account based on what he would have received as a monthly retirement benefit, had he actually terminated employment on the day he enrolled in DROP. See LSA-R.S. 11:448(C). The DROP enrollee does not receive the funds credited into the account until employment actually terminates. LSA-jR.S., 11:450(B).. All of the Judges enrolled in DROP. In connection with this enrollment, each signed an application to retire under the DROP provisions, acknowledging that his status with the retirement system after his beginning date of DROP “is that of retiree.”
A conflict arose when LASERS indicated it would compute the Judges’ base annual retirement benefits using the salary in effect on the date each enrolled in DROP, rather than on the salary in place on the date each ended his judicial service following the DROP participation years. The Judges also became aware that certain supplemental benefits available to them for service in the legislature, service in a prosecutorial capacity, or service in the armed forces would be calculated using a three-year average of each plaintiffs salary, rather than being based on the salary in place when each ended his judicial service. The Judges objected to LASERS’ position with respect to the application of the statutes governing their retirement benefits, because after their enrollment in DROP, the legislature approved and enacted a salary increase of four percent for all members of the judiciary as of July 1, 1996, and an additional four percent salary increase as of July 1, 1997. Because LASERS refused to calculate the Judges’ retirement benefits based on the salary in place when each ended his actual service in office, the Judges eventually filed this lawsuit for a declaratory judgment.
The lawsuit asked for a declaration from the district court that each of the Judges is entitled to receive the proceeds accumulated while he was or will be a participant in DROP and that each is entitled to receive retirement benefits based on his annual judicial pay as of the end of his actual full-time service as a member of the judiciary, which would include the two salary increases, rather than as of the date each enrolled in DROP, which would not include the two increases. Additionally, the Judges sought a declaration that any supplemental benefits payable to them must be determined by using the amount of salary being paid to each of them as of his last day of full-time service for the state, rather than being computed on a three-year average salary. Both sides filed motions for summary judgment. After a hearing on the motions, the court denied the Judges’ motion, granted summary judgment in favor of LASERS, and dismissed the Judges’ suit.
| ¿In this appeal, the Judges contend the district court erred in granting LASERS’ motion for summary judgment and in denying their motion for summary judgment, erred in its interpretation of the definition of retirement, erred in resolving statutory ambiguity against the Judges, erred in depriving the Judges of the maximum benefits available from a “blended approach” to the retirement statutes, erred in not following prior jurisprudence from this court, and erred in reducing the Judges’ *699 retirement benefits in violation of the Louisiana Constitution. LASERS argues that the statutes are not ambiguous and are merely being applied as written, considering and harmonizing all laws on the same subject matter to achieve consistent results.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. See Minor v. Casualty Reciprocal Exchange, 96-2096 (La.App. 1st Cir.9/19/97), 700 So.2d 951, 953, writ denied, 97-2585 (La.12/19/97), 706 So.2d 463.
BASE ANNUAL RETIREMENT BENEFITS
The provision under which the Judges became eligible for retirement is set out in Act 1063 of 1991, now designated as LSA-R.S. 11:558(A)(5)(a), which states, in pertinent part:
(i) Any judge, whether covered by this Subpart or R.S. 11:1351 through 1358, whose judicial division or position was not precleared by the United States Department of Justice prior to July 30, 1991, holding office on the initial effective date of this Paragraph by appointment or otherwise, and any judge currently serving in a court which has been held by a federal court to be in violation of the Voting Rights Act or currently serving in a court which is restructured by federal court order, shall be allowed to retire at the end of his service in office, regardless of his age | ¡¡and years of service, provided that such judge does not seek reelection to his current judicial office nor seek election to another judicial office.
The base annual benefit is described in the next paragraph of this statute, as follows:
(ii) The judge shall receive as a base annual benefit that proportion of his annual judicial pay, as it exists on the date of his retirement, which his number of years served on a court of record bears to twenty-five, (emphasis added).
The pertinent provisions of DROP, in LSA-R.S. 11:448, state the following:
A. Upon the effective date of commencement of participation in the plan and during the period of participation in the plan, membership in the retirement system shall cease and the participant shall be considered by the system to be in a retired status. During this period, neither the employee or employer contributions shall be payable.
B. For purposes of this Section, final average compensation and creditable service shall remain fixed as they existed on the date of commencement of participation in the plan. Creditable service shall not include conversion of sick and annual leave, (emphasis added).
Monthly retirement benefits are not paid to the member until both his participation in DROP and his employment cease, at which time he is paid a “base benefit” equal to his monthly credit to the account, calculated as of the time participation in DROP commenced. LSA-R.S. 11:450.[2]
*700 At issue in this litigation is whether each Judge’s “date of retirement” occurs at the end of his service in office or on the date he enrolls in DROP. In support of their position, the Judges cite LSA-R.S. 11:403(24), which defines “retirement” for members of LASERS as “termination of active service, with a retirement allowance granted under the provisions of this Chapter.” Relying upon this definition, the Judges argue that because they did. not terminate their active service on the date they enrolled in DROP, they cannot be considered “retired” as of that date. However, LASERS considers any member who enters DROP to be “retired” as of that enrollment' date, because the monthly credit is fixed on that date and this amount eventually becomes the “base benefit.”
|fiIn this matter, the Judges began receiving a retirement allowance in the form of payments made to their DROP accounts upon entering DROP, but there was no termination of active service. Upon entering DROP, one no longer contributes to the retirement system; benefits are paid into a DROP account as if employment had ceased, but one does not immediately terminate service.
We begin our analysis by considering LSA-R.S. 11:403, and note that the introductory sentence to the definitions in this section states, “The following words and phrases used in this Chapter, unless a different meaning is clearly required by the context, shall have the following meanings.... ” (emphasis added). In this case, a different meaning for the word “retirement” is clearly required by the context — otherwise, the DROP provisions would be unworkable.[3] The definition of “retirement” in § 403(24) presupposes termination of active service, but DROP clearly envisions the continuation of active service for up to three years, if a member is to receive the full benefits of DROP.
Therefore, the term “retirement” must be read in conjunction with the DROP provisions for those who choose to enroll in DROP. Louisiana Revised Statutes ll:558(A)(5)(a)(ii) predicates the determination of a judge’s base annual benefit on his annual judicial pay “as it exists on the date of his retirement.” If the judge actually terminates active service, the definition of retirement contained in § 403(24) is fully applicable. However, if the judge elects to participate in DROP and continues in active service, then the meaning of the term “retirement” is modified by § 448, which mandates that the participating judge “shall be considered by the system to be in a retired status.” Because such a judge is considered to be retired, although continuing in active service, the DROP provisions are applied to determine the basis upon which his retirement benefits are to be calculated. We therefore conclude that in the context of |7DROP and for the purpose of computation of the base benefit, “retirement” occurs upon contractually enrolling in DROP and achieving retiree status.
We find support for this conclusion in the Louisiana Supreme Court’s detailed *701 discussion of DROP in Bailey v. Bailey, 97-1178 (La.2/6/98), 708 So.2d 354. In that action to partition community property, Mr. Bailey had enrolled in DROP during the marriage and, while he was still employed and participating in that plan, he and Mrs. Bailey divorced. The issue was whether the monthly payments credited to Mr. Bailey’s DROP account after the termination of the couple’s community property regime were to be treated as community property or as his separate property. The court held that the funds were community property. The supreme court noted that:
In the DROP situation, the employee spouse’s election to enter the DROP program operates, as of the date of that election, to fix the base amount of the employee’s eventual monthly retirement benefits, and this amount is credited to the DROP account monthly as retirement benefits, although the actual receipt of the funds in that account is deferred until the employee actually retires. (footnote omitted).
******
The statutory provisions governing the DROP program refer repeatedly to the DROP benefits as “retirement benefits” and fix such benefits as of the date of entry into DROP. Moreover, the statutes expressly provide that if an employee elects to remain in state employment after the DROP period, any future retirement credits earned are in the nature of a supplemental pension. [LSA-R.S. 11:450(D) ]. The latter treatment fully supports our holding that the date of entry into DROP fixes a non-employee spouse’s interest in the entirety of the retirement benefits, both the DROP benefits and the regular retirement benefits.
Bailey, 708 So.2d at 358-59. Even the dissenting justice, Justice Traylor, noted that the majority opinion treated Mr. Bailey’s entry into DROP as an “actual retirement.” Bailey, 708 So.2d at 360. It is clear that the supreme court did not find any ambiguity in the DROP statutory provisions concerning the retirement status of its participants; as of the date of entry into DROP, the participant is considered retired and benefits are fixed as of that date.
An equally significant factor in our conclusion is the agreement signed by each of the Judges upon enrollment in DROP. That agreement stated, in pertinent part:
I hereby make application to retire under the provisions of the Deferred Retirement Option Plan. I realize it is an optional method for retiring ... and that my status with the retirement system is that of retiree after the beginning date of DROP, ... I certify that the provisions | sof the DROP program have been explained to me to my satisfaction, (emphasis added).
Our legal system affords parties the right of freedom of contract and the right to create law as between themselves. Article 1971 of the Louisiana Civil Code states that parties are free to contract for any object that is lawful, possible, and determined or determinable, and Article 1983 provides that such contracts have the effect of law for the parties and may be dissolved only through their consent or on grounds provided by law. Relying on this freedom of contract, the Judges entered into an agreement with LASERS in which they chose to participate in DROP. Upon entering DROP, they freely and voluntarily derogated from the general provisions governing retirement and subjected themselves to the specific laws governing DROP. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. There is nothing unclear or ambiguous about what occurs when one contracts to participate in DROP. The statute provides, and the Louisiana Supreme Court reiterated in Bailey, that when a person commences participation in DROP, that person is in a retired status and final compensation and *702 creditable service are fixed as.of the enrollment date.
The Judges contend that Act 1063 is a specific provision that applies only to a certain limited number of judges who fit within its provisions and retire pursuant to its conditions. Act 1063 provides that a judge’s retirement benefits are to be based on his salary at the termination of service. However, based on the agreement entered into by the Judges to participate in DROP, the DROP statutory provisions became specifically applicable, as opposed to the retirement provisions of Act 1063. Act 1063 judges were not required to enter DROP. Thus, Act 1063 may have been a specific provision for certain judges as compared with other state employees, but the DROP provisions are superimposed on Act 1063 for judges who voluntarily enter DROP.
Any attempt to apply other statutory provisions ignores the agreement entered into by the Judges and the clear provisions of the law governing DROP, which provide that retirement benefits are calculated on the salary as of the date one enters DROP. See LSA-R.S. 11:448(B). The Judges are all learned in the law. They opted to | ¡participate in DROP to secure the benefits provided by that plan. After reaping the benefits of DROP, they cannot opt out of a portion of the agreement that is not advantageous. This matter is not about what the Judges deserve, for each, without question, provided a valuable service to this state, to his community, and to society by discharging the difficult duties and responsibilities incumbent upon him while serving as a judge.[4] Rather, this matter is about what these Judges are entitled to, based on a fair application of the statutes and the agreement they signed.
Contrary to the Judges’ argument, our conclusion on this issue does not derogate from this court’s decision in Edwards v. Trustees of Louisiana State Employees’ Retirement System, 600 So.2d 1353 (La.App. 1st Cir.), writ denied, 601 So.2d 663 (La.1992). That case affirmed a judgment declaring that a judge’s retirement pursuant to LSA-R.S. 11:558(A)(5) was “regular retirement” within the meaning of DROP, thus making such a judge eligible for DROP as well as the enhanced benefits of LSA-R.S. 11:558(A)(5). This court held that:
[T]he best combinations of both systems [the original contributory retirement plan for judges and the LASERS’ plan], age and service eligibility requirements and benefits or choices, became available to the plaintiff judge-member of LASERS in 1987, before DROP was enacted in 1990. Similarly, after DROP, the plaintiff-judge member of LASERS was privileged to exercise the DROP option.
Edwards, 600 So.2d at 1357. The Edwards case did not address the conclusion we reach in this case, namely, that once a judge elects to avail himself of the benefits of DROP, he must abide by the provisions of that plan.
We also reject the Judges’ contention that this application of the DROP provisions decreases their retirement benefits in derogation of the Louisiana Constitution. The Louisiana Constitution prohibits the reduction of a judge’s retirement benefits “during the term for which he is elected.” LSA-Const. Art. V, § 21. The Judges’ retirement benefits are not being decreased or reduced by application of the DROP enrollment date as their retirement date; their benefits are simply being fixed as of that lúdate, in accordance with the clear provisions of DROP and the agree *703 ment signed by the Judges. We find no constitutional implications in the application of the DROP provisions. The method of calculating benefits occurred as a result of the actions of the Judges themselves by voluntarily enrolling in DROP.
Based on the foregoing, we conclude the district court did not err in granting LASERS’ motion for summary judgment on this issue. LASERS correctly applied the law in fixing the Judges’ base retirement benefits as of the date each enrolled in DROP, rather than the date each terminated his full-time judicial service.
SUPPLEMENTAL BENEFITS
The Judges claim they are entitled to supplemental benefits ' described in LSA-R.S. 11:558(A)(5)(a)(ii), in pertinent part, as follows:
As a supplemental benefit, a judge covered by R.S. 11:1351 through 1358 shall receive a sum equal to three and one-half percent of his annual judicial pay, as it exists on the date of his retirement, for each year, not to exceed four years, that he served in the armed forces of the United States, a sum equal to three and one-half percent of such pay for each year that he served as a member of the legislature of this state, and a sum equal to two and one-half percent of such pay for each year that he served in a prosecutorial capacity with an office of district attorney or any other political subdivision or agency of this state, (emphasis added).
The Judges contend this provision mandates that computation of their supplemental benefits must be based on their salaries on their last day of judicial service, rather than being computed on a three-year average, as LASERS proposes.
We disagree, for two reasons. The first is based on our conclusion in the preceding section that, to compute retirement benefits for participants in DROP, the date of retirement is equivalent to the date of enrollment in DROP. Accordingly, if any single date were to be selected, it would have to be the date each of the Judges enrolled in DROP. However, the second and more compelling reason for rejecting this argument is that none of the Judges are covered by LSA-R.S. 11:1351 through 1358, which is a non-contributory plan for judges who were in office on October 1, 1976, and who did not timely exercise the option to become members of LASERS. LSA-R.S. 11:1351(A). In responses to requests for admissions in the record, each of the Judges admitted that he is a member of LASERS. Each would therefore be covered by the In second portion of LSA-R.S. 11:558(A) (5) (a) (ii) addressing supplemental benefits, which states:
As a supplemental benéfit, a judge covered by the provisions of this Subpart shall receive a sum equal to what would otherwise be payable to him, as a retirement benefit by the Louisiana State Employees’ Retirement System, assuming he was otherwise eligible for retirement thereunder, disregarding any age and years of service requirements, on account of his service in the armed forces of the United States, his service as a member of the legislature of this state, and his service rendered in a pros-ecutorial capacity with an office of district attorney or any other political subdivision or agency of this state, provided credit and benefits relative thereto are established in accordance with the otherwise applicable laws concerning same governing the Louisiana State Employees’ Retirement System. However, in no.case shall the total of benefits paid to any judge exceed one hundred percent of his judicial pay, as it exists on the date of his retirement, (emphasis added). •
The retirement benefits that would otherwise be payable to members of LASERS are based on a percentage of average compensation for every year of creditable service. See LSA-R.S. 11:444. “Average compensation” for judges retiring under this legislation is defined in LSA-R.S. 11:558(D) as “the average annual earned *704 compensation of the member for any three years of creditable service during which such earned compensation was the highest.”
Based on this statute, therefore, LASERS is correct in using a three-year average in computing the supplemental benefits due to each of the Judges. However, we note that an affidavit submitted by LASERS stated that the “average compensation” for each of the plaintiffs was computed pursuant to LSA-R.S. 11:403(5), using the date each entered DROP as the retirement date. That statute provides, in pertinent part:
“Average compensation” means the average annual earned compensation of a state employee for the thirty-six highest months of successive employment, or for the highest thirty-six successive joined months of employment where interruption of service occurred.... (emphasis added).
Because these Judges are retiring pursuant to the provisions of LSA-R.S. 11:558 and DROP, their supplemental benefits should be computed on their “average compensation,” as defined in LSA-R.S. 11:558(D).[5]
|1P.In most cases, it is likely that the same three years would be averaged under either definition, thus making this a distinction without a difference. The record before us does not reflect which three years are actually being used by LASERS in computing the supplemental benefits for each of the Judges. We point out this distinction merely to clarify that the three-year average used to compute these benefits should be that described in Subsection D of LSA-R.S. 11:558. In any event, LASERS is correct in using a three-year average in computing the supplemental benefits, and the Judges’ contention that these computations should be based on their annual judicial pay as of the last day of active service is without merit. Accordingly, the trial court did not err in granting LASERS’ motion for summary judgment on this issue and dismissing the Judges’ petition.
CONCLUSION
Based on the foregoing, the judgment of the trial court denying the Judges’ motion for summary judgment, granting LASERS’ motion for summary judgment, and dismissing the Judges’ suit, is affirmed. All costs of this appeal are assessed against the Judges.
AFFIRMED.

. Act 1063 enacted LSA-R.S. 13:16(A)(5), which was redesignated as LSA-R.S. 11:558(A)(5) by 1991 La. Acts, No. 74.

. This provision was amended by 1997 La. Acts, No. 515, § 1. Section 3 of this legislation specified that the amendment was to be given retroactive application to January 1, 1991. The requirement that the "base benefit” be calculated as of the time the participant en *700 tered DROP did not change by virtue of this amendment; the statute previously defined the “base benefit” in terms of the participant's monthly credit to the account, which, under LSA-R.S. f 1:448, was fixed as of the commencement of participation in the plan.

. We note that DROP was enacted in 1990, long after the definitions in § 403 were first enacted in 1972. See former LSA-R .S. 42:543. Before the enactment of DROP, the definition of "retirement” in § 403(24) was uncomplicated; a judge or other LASER member had to wait until the end of his service in office before being able to accrue a retirement allowance. However, the incongruity in applying the definition arose when DROP was enacted, allowing an eligible member of LASERS to begin to accrue a retirement allowance while still in office. DROP enables its enrollees to accumulate up to three years of retirement benefits while still working and receiving a full salary and other employment benefits. Thus, the only part of the § 403(24) definition of "retirement” which could be applied to those enrolled in DROP is the portion referring to receipt of a retirement allowance.

. In the words of the late Judge Albert Tate, each judge is “the medium through which the law expresses itself; ... the law which is the eternal human grappling with the ever-changing human problems and the attempting to resolve them objectively and both humanely for the individual and wisely for society.” Quoted in Roger A. Stetter, A Portrait of the Good Lawyer, in In Our Own Words: Reflections on Professionalism in the Law 3, 9 (Louisiana Bar Foundation 1998).

. As previously noted, during a member's participation in DROP, the amount of creditable service remains fixed as it existed on the date ed commencement in DROP. LSA-R.S. 11:448(B).