775 So.2d 1246 (2000)
INDUSTRIAL INDEMNITY COMPANY OF THE NORTHWEST
v.
The CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA.
No. 1999 CA 2535.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*1247 Lynn H. Frank, New Orleans, for Appellant Plaintiff U.S. Fire Insurance Company Successor of Industrial Indemnity Company.
Steven M. Lozes, New Orleans, H. Alston Johnson, III, Baton Rouge, for Appellee Defendant Central National Insurance Co. Vesta Insurance Company as Successor to Liberty Mutual Fire Insurance Co.
Before: FOIL, FITZSIMMONS and GREEN,[*] JJ.
FOIL, J.
This appeal challenges the grant of a summary judgment on the issue of insurance coverage. We reverse.

BACKGROUND
This litigation involves a dispute between two insurance companies over the cost of indemnity and defense of a personal injury claim filed by Douglas Day in 1985. Plaintiff, Industrial Indemnity Company of the Northwest (Industrial) paid over one million dollars on behalf of its insured, Trans American Transport (TAT) in the underlying litigation, and filed this suit seeking reimbursement from Central National Insurance Company (CNIC).[1] CNIC, which had originally filed an answer in the Day lawsuit, soon withdrew and refused to provide TAT a defense on the basis that TAT was not a named insured on the policy.
Industrial filed a motion for summary judgment, asking the court to reform the CNIC policy to make TAT a named insured thereon. Industrial's motion also sought determinations that: (1) CNIC waived all coverage defenses; (2) the CNIC policy provided coverage for the accident; (3) CNIC waived its right to challenge the finding of the Day courts; (4) CNIC must pay a pro-rata share of damages and defense costs, which it urged was 66% and (5) CNIC is liable for all costs of the reimbursement suit.
CNIC filed a cross motion for summary judgment on the coverage issue, arguing that the policy did not provide coverage. CNIC also filed a reconventional demand insisting that in the event Industrial did succeed on its reimbursement claim, Industrial abused TAT's rights in the underlying litigation by allowing the loss to fall on TAT, rather than another entity, Trans America Brokerage (TAB). Industrial asserted the defenses of res judicata, wavier and no right of action to the reconventional demand.
The evidence offered by both parties in support of and in opposition to the motions for summary judgment can be summarized as follows: George and Betty Thompson operated a trucking business called Freight Expenditures, which was headquartered in Tacoma, Washington. They owned no equipment, and acted as the broker for companies desiring transportation services. At some point, they were advised by the Interstate Commerce Commission that they could not operate a brokerage business without having a transportation entity. Around 1983, they phased out Freight Expenditures and formed two corporations to conform with the ICC regulations. They called the first Trans American Transport (TAT), which owned equipment and operated as a broker. TAT was incorporated in the state of Washington. The second company, Trans American Brokerage (TAB), dealt exclusively with the brokerage of freight and owned no equipment.
While operating as Freight Expenditures, the Thompsons procured liability insurance from the Dudley Stair Agency. They purchased a commercial liability package from Industrial, which contained a comprehensive commercial liability insurance *1248 policy (CGL), a commercial auto liability policy and an excess/ umbrella policy. TAT and TAB were added as named insureds to the policy at different times.
In their depositions, the Thompsons revealed that when they set up TAT, they purchased equipment from Richard Kassuhn, who had also been operating a trucking business called R & R Trucking. The Thompsons leased Mr. Kassuhn's ICC number to operate their business. Mr. Kassuhn had obtained a one million dollar auto liability insurance policy from CNIC for R & R trucking, purchased through the Bell-Anderson Insurance Agency. Mr. Kassuhn put the Thompsons in touch with the Bell-Anderson agency, and they met with agent Mark Sheythe.
The CNIC policy at issue is a trucker's automobile policy, effective from October 24, 1984 through October 20, 1985, and covers "any auto." It lists as the named insureds: Richard T. Kassuhn dba R & R Trucking; Richard T. Kassuhn dba Trans-america Transport, along with Kassuhn and George Thompson individually.
The evidence reflects that TAT paid the CNIC policy premiums from December of 1984 though October of 1985. Checks made payable to the Bell Anderson Agency drawn on the account of Trans American Transport, Inc. were offered into evidence by Industrial. Industrial also offered evidence of numerous letters written by TAT's bookkeeper, Betty Stutheit, to Mr. Sheythe at Bell Anderson setting forth TAT's gross monthly receipts, which apparently determined the premium rate. These letters are all written on Trans American Transport letterhead.
Additionally, Industrial introduced a fleet liability report prepared at the request of J. Gordon Gaines, the managing general agent for CNIC regarding the truckman class. The report, dated January 11, 1985, lists "Transamerican Transport, Inc. and R & R Trucking" as the insured/applicant, and identifies the company as a corporation. Other correspondence from TAT to the Bell Agency offered by Industrial included letters in which the company requested insurance for a trip lease and advised Bell Anderson that it was removing one of the trucks from its fleet.
On September 6, 1985, the accident forming the basis for the reimbursement dispute occurred, and was summarized by this court in Day v. South Line Equipment Company, 551 So.2d 774 (La.App. 1 Cir.1989), writ denied, 553 So.2d 474 (La. 1989), as follows: In 1985, Milchem sold seven forklifts located in Houma, Louisiana, to Southline Equipment Company. Southline's employee contacted TAT to arrange for the transportation of the forklifts from Houma to its offices in Houston, Texas. He spoke with TAT employee Clyde Reid regarding the number of units. Reid contacted Richard Perry, who owned his trailer, to perform the transportation services.
On September 6, 1985, Perry arrived at the Milchem facility in a high-level, flatbed tractor-trailer. The Milchem facility was not equipped with loading docks, and Perry did not have equipment to load the forklifts. Perry and a Milchem employee, Douglas Day, decided to use one forklift to load the others onto the trailer. After the fourth forklift had been lowered onto the flatbed, Day mounted the forklift while it sat on the flatbed and attempted to maneuver it beside the third forklift. When Day pushed the foot pedal forward, the forklift lurched backwards. As Day attempted to apply the brakes, the brake line broke, the forklift rolled off of the back of the flatbed and crushed Day's right leg. As a result of the injuries sustained in the accident, Day underwent two amputations and eleven surgeries on his leg.
In 1986, Day filed suit seeking damages in the Twenty-Second Judicial District Court. Named as defendants were Southline, Perry and his insurer, along with "Trans-American Transportation Company" *1249 and its insurer, Industrial. The petition was amended to add TAB as a defendant. Plaintiffs alleged that either TAT of TAB was negligent in failing to provide a safe vehicle to load the equipment and in failing to provide safety devices on the flatbed trailer to prevent the accident. They further alleged that TAT was negligent in failing to instruct employees or contractors on safe loading techniques and in failing to provide adequate equipment and crews to load the equipment.
CNIC was not named as a defendant in the lawsuit. However, Barbara Bowden, TAT's in-house counsel, attested that she notified Bell Anderson's agent, Mark Sheyte, of the claim immediately after the suit was served on TAT. At some point, she notified CNIC of the suit and requested a defense. On June 25, 1986, Gerard Dillon, CNIC's attorney, filed an answer to the petition on behalf of TAT, denying liability. One month later, Mr. Dillon was instructed by CNIC to withdraw from the lawsuit. CNIC concluded that the policy did not cover any of the corporate entities named in the Day petition.
During the trial, the claims against Southline were settled. One issue in the trial was whether TAT or TAB contracted with Southline for the transportation of the forklifts from Houma to Houston. At the conclusion of the trial, the jury was presented with a jury form listing both TAT and TAB, and they were instructed to determine fault as to only TAT or TAB, but not both.
The jury found Southline and TAT to be at fault in causing the accident, assessing 60% fault to Southline and 40% to TAT. The participants in the loading process, Day and Perry, were found to be free from fault.
The jury awarded the Days over two million dollars. Judgment was entered against TAT and Industrial for $874,000.00 plus interest and costs. On appeal to this court, TAT and Industrial challenged the fault assessment and the amount of damages. TAT argued that TAB was the party that contracted with Southline for transportation of the forklifts, and urged, therefore, that TAT could not be liable for the damages. On that issue, this court held that although the evidence was conflicting, the record was replete with evidence establishing that TAT was the party with whom Southline contracted to provide transportation services. This court also affirmed the jury's finding of negligence on TAT's part, concluding:
The testimony adduced at trial supports the conclusion that Trans-American Transport had a duty to provide the proper vehicle to transport the used forklifts and/or to provide adequate equipment to assist loading the forklifts on the type of vehicle sent. The jury determined that Trans-American Transport was at fault in sending only one trailer and/or sending a high-level trailer without equipment to assist in the safe loading of the forklifts and that the accident was caused, in part, by this failure.
Day v. South Line Equipment Company, 551 So.2d at 782.
Finally, the judgment rendered against TAT and Industrial was reduced to $724,800.00.
In satisfaction of the judgment, Industrial paid the Days $1,044,044.61. Industrial also offered evidence showing that it paid $107,563.32 in defense costs on behalf of its insured.
On the motions for summary judgment addressing the issue of coverage of the CNIC policy for Day's injuries, Industrial and CNIC disputed whether the accident arose from the "use" of the transportation vehicle. CNIC's policy provided automobile liability coverage for damages caused "by an accident and resulting from the ownership, maintenance or use of a covered auto." Industrial insisted the trailer was being "used" when the injury occurred because it was being loaded, and also urged that the policy itself provided coverage for loading and unloading as a use of the covered vehicle. CNIC argued that whether the policy covered loading *1250 was irrelevant because the jury exonerated the participants in the loading process and no negligence thus arose out of that process. CNIC argued that TAT's fault was based on its decision to send the wrong type of trailer for the loading job and in failing to send the proper accessory equipment to load the forklifts onto the trailer. CNIC argued that the decision to send the wrong trailer for the job was an act occurring prior to any operation, maintenance or use of the Perry vehicle and was not covered by the auto policy. Instead, CNIC urged, TAT's negligence was covered by the CGL coverage afforded to TAT by the Industrial policy.
The trial judge reformed the policy to include TAT as a named insured. The judge also rejected Industrial's claim that CNIC waived coverage defenses by withdrawing from the Day litigation, and agreed with CNIC on the coverage issue. The judge noted that the negligent act of TAT was the selection of the wrong type of trailer for movement of the forklifts. This risk, he concluded, is encompassed by CGL insurance rather than automobile liability coverage. Upon finding that the CNIC policy did not cover the negligent act of TAT, the trial judge granted summary judgment in favor of CNIC, thereby dismissing this reimbursement lawsuit. This appeal, taken by Industrial, followed.

PROCEDURAL ISSUES
CNIC's brief raises two procedural issues. In the first, CNIC points out that in addition to appealing the grant of summary judgment in CNIC's favor, Industrial asks this court to review the denial of its motion for summary judgment and render summary judgment in favor of Industrial. CNIC argues that because the denial of Industrial's motion for summary judgment was an interlocutory ruling that is not appealable, Industrial should have filed writs challenging that decision with this court. It urges that since Industrial failed to do so, this court should not entertain the denial of Industrial's motion for summary judgment, nor should we consider Industrial's request to grant summary judgment on the coverage issue in its favor.
It is true that generally, a denial of a motion for summary judgment is an interlocutory ruling which cannot be appealed. La.Code Civ. P. art. 966. However, as is the case with other interlocutory rulings, the denial of a motion for summary judgment may be reviewed in conjunction with other appealable issues for the sake of judicial economy. Kidd v. Independent Fire Ins. Company, 95-1273, p. 4 (La.App. 4 Cir. 1/19/96), 668 So.2d 406, 408 n. 3. In fact, it has been stated that a trial court's overruling of a motion for summary judgment can only be appealed with the final judgment in the case. Devers v. Southern University, 97-0259, p. 16 (La.App. 1 Cir. 4/8/98), 712 So.2d 199, 209. Thus, by challenging the denial of its motion in connection with an appeal of a final judgment granting summary judgment in favor of the opponent, Industrial has utilized the proper procedure to obtain review of the denial of its motion, and we shall consider Industrial's motion in this appeal.
Secondly, although acknowledging the longstanding rule that this court reviews summary judgments de novo, CNIC asks that we now adopt a manifest error standard, employed in the case of factual findings, in reviewing summary judgments. CNIC believes a change in the standard of review is mandated in light of the recent legislative changes which make summary judgments favored in the law. We disagree. The purpose of a summary judgment is to expeditiously dispose of those cases involving only issues of law. Jack v. Johnson, 618 So.2d 448, 450 (La.App. 5 Cir.1993). This court reviews questions of law simply to determine whether the trial court was legally correct or legally incorrect. Karno v. Trustees of the Louisiana State Employees' Retirement System, 98-1335, p. 4 (La.App. 1 Cir. 9/24/99), 757 So.2d 696, 699, writ denied, XXXX-XXXX (La.2/11/00), 754 So.2d 936.
Thus, because issues of law are involved, this court reviews summary judgments de *1251 novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. Richard v. Swiber, 98-1515, p. 4 (La. App 1 Cir. 9/24/99), 760 So.2d 355, 358. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966 B.

SUBSTANTIVE CHALLENGES
The trial court reformed the CNIC policy to list TAT as a named insured. This ruling is not challenged by CNIC. Industrial contends that the reformation of the policy should apply retroactively to the date of the policy to bar CNIC from raising coverage defenses. Industrial also contends that CNIC waived all policy defenses because it assumed the defense of TAT in the Day litigation, but failed to obtain a nonwaiver agreement to reserve its coverage defenses. In light of our ruling on the coverage issue, we pretermit discussion of these assignments of error.

COVERAGE
In its trucker's liability policy, CNIC promised to pay all damages TAT was required to pay because of injuries to which the policy applied "caused by an accident and resulting from the ownership, maintenance or use of a covered auto." It is undisputed that Richard Perry's tractor-trailer fit the definition of a covered auto under the CNIC policy.
The policy contained the following exclusion from coverage:
Bodily injury or property damage resulting from the handling of property:
a. Before it is moved from the place where it is accepted by the insured for movement into or onto the covered auto, or
b. After it is moved from the covered auto to the place where it is finally delivered by the insured.
The policy excludes from coverage injuries resulting from the handling of property before accepted by TAT for movement onto the transport vehicle and those occurring after the property is delivered. Although the CNIC policy does not expressly define the term "use" to include loading and unloading, it does attempt to delineate the scope of loading and unloading coverage through an exclusion. By implication then, the CNIC policy covers injuries resulting from loading property onto and unloading property from the insured vehicle. Thus, we conclude that the CNIC policy provides coverage for injuries occurring during the loading and unloading as a "use" of the covered vehicle.[2]
By contrast, the Industrial CGL policy, as do most CGL policies, expressly excludes from the scope of its coverage injuries arising during the loading and unloading of a vehicle. Although it is undeniable that Douglas Day's injuries arose during the loading of a vehicle covered under the CNIC automobile policy, CNIC argued, and the trial court found, that the negligence of TAT in providing an unsuitable transportation vehicle was not a "use" of the vehicle, and therefore the CGL policy, rather than the automobile liability policy, provided coverage.
Both of the parties to this appeal attempt to apply tests developed by the courts to determine whether an accident arises out of the "use" of a vehicle so as to trigger coverage under an automobile policy and exclude coverage under a CGL policy. In deciding such coverage issues, courts are required to answer two questions: (1) was the conduct of the insured of which the plaintiff complains a legal cause *1252 of the injury?, and (2) was it a "use" of an automobile? Edwards v. Horstman, 96-1403, p. 5 (La.2/25/97), 687 So.2d 1007, 1011.
The first element is easily met in this case, as the conduct of TAT in furnishing an unsafe and inadequate transportation vehicle was clearly a cause of Douglas Day's injuries. In order for the insured's conduct to constitute "use" of an automobile, the conduct must be essential to the theory of liability and the specific duty breached by the insured must flow from the use of the automobile. Edwards v. Horstman, 96-1403 at p. 7, 687 So.2d at 1012. If the specific duty breached by the insured existed independently of the automobile, then liability does not arise out of use even though the duty could have been performed by the use of an automobile.
CNIC points out TAT was found to be negligent in sending the wrong type of trailer for the loading job to be accomplished by the seller's employees, which was pre-loading. It argues that even if its policy covers injuries sustained in the loading process, the jury did not assign fault to any of the participants in that process, and therefore, there cannot be any "legal cause" of injury in the loading process, and thus there is no basis for the conclusion that the negligence of TAT was the "use" of a vehicle that was the "legal cause" of the injury to Douglas Day.
We disagree. The loading, and thus use, of the covered vehicle was essential to the theory of liability. TAT's negligence in sending an unsuitable vehicle to accomplish the loading job simply cannot exist independently of the use of the transportation vehicle. Furthermore, our courts have rejected artificial formulas to resolve use issues in favor of a common-sense approach.
In this case, a loading accident occurred on a vehicle covered under CNIC's automobile policy because of the negligence of the insured in providing a vehicle unsuitable for that loading operation. The CNIC policy provides coverage for injuries arising during the loading of the vehicle. On the other hand, the CGL policy excludes coverage for injuries arising from the loading of an automobile. These policies are thus mutually exclusive. Common sense dictates a finding that the automobile policy provided coverage for the injuries sustained by Douglas Day in the loading accident.
For the above reasons, we hold that the CNIC policy provided coverage for Day's injuries, reverse the summary judgment entered in favor of CNIC and grant summary judgment in favor of Industrial on the coverage issue. Industrial's lawsuit also raises issues regarding apportionment of the amounts owed by the respective insurers, its entitlement to costs of the defense and whether it can be reimbursed the costs of bringing this reimbursement lawsuit. Accordingly, we remand this case to the trial court to conduct proceedings not inconsistent with this opinion. Costs of this appeal are assessed to CNIC's successor, Vesta Insurance Company.
REVERSED AND RENDERED; REMANDED.
NOTES
[*] Judge Alan J. Green of the Twenty-Fourth Judicial District Court serving Pro Tempore by special appointment of the Louisiana Supreme Court.
[1] Industrial's rights have been acquired by U.S. Fire Insurance Company, while CNIC's rights are now held by Vesta Insurance Company.
[2] Instead of arguing that the CNIC policy does not cover loading and unloading, CNIC argues that whether the loading of the forklift was a use of the vehicle is immaterial since no fault was assigned to anyone in the loading process. We disagree. The jury's exoneration of those participants represents nothing more than a finding that the participants did not act unreasonably in attempting to load a vehicle not suitable for the job. It does render the loading process itself immaterial to the coverage issue presented.