844 So.2d 90 (2003)
BOARD OF TRUSTEES OF STATE EMPLOYEES GROUP BENEFITS PROGRAM
v.
The ST. LANDRY PARISH BOARD, et al.
No. 2002 CA 0393.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
Writ Denied May 9, 2003.
*91 H. Alston Johnson, III, Baton Rouge, Counsel for Plaintiff/Appellant The Board *92 of Trustees of the State Employees Group Benefits Program.
Asa A. Skinner, First Assistant District Attorney, Terry W. Lambright, Assistant District Attorney, Leesville, Counsel for Defendant/Appellee Vernon Parish School Board.
A. Gerard Caswell, Eunice, Counsel for Defendant/Appellee St. Landry Parish School Board.
Before: KUHN, DOWNING, and GAIDRY, JJ.
KUHN, J.
The Board of Trustees of the State Employees Group Benefits Program (the "Board of Trustees") filed this suit seeking a declaratory judgment against the St. Landry Parish School Board and the Vernon Parish School Board ("the School Boards"). The Board of Trustees sought a ruling that it was entitled to "risk-rate" the teachers, other school board employees, and persons retired from those positions ("school board participants") upon their entrance into the State Employees Group Benefits Program ("the State Group Program" or "the Program") after participating in another group health and accident program. "Risk-rating" would allow the Board of Trustees to set the premium for these school board participants at "the greater of the premium rate based on the loss experience of the group under the prior plan or the premium rate based on the loss experience of the classification into which the group is entering" as referred to in Acts 1988, No. 902, § 1 (former La. R.S. 42:851 A(5)(b)(iii)). The School Boards reconvened, alleging that the Board of Trustees had improperly "risk-rated" the school board participants for the first year of participation in the program based on the provisions of Acts 1992, No. 601 (former La. R.S. 42:881).[1] This provision imposes "risk-rating" on participants from entities that have 50% or more of its employees participating in a health maintenance organization ("HMO"). The School Boards sought a refund of the additional premiums collected based on the "risk-rating" practice.
In response to each party's motion for summary judgment, the trial court signed a judgment denying the Board of Trustees' motion for summary judgment and granting the School Boards' motions. The trial court ordered the Board of Trustees to refund the additional premiums that the School Boards paid due to the "risk-rating." Finding merit in the arguments advanced by the Board of Trustees on appeal, we reverse and render judgment in its favor.

I. FACTUAL AND PROCEDURAL BACKGROUND
The State Group Program and its Board are authorized to provide health and accident coverage for eligible state employees and retired employees either through securing private contracts of insurance or by operating a self-funded program for that same purpose.[2] La. R.S. 42:851 A(1)(a). Teachers, other school board employees, and persons retired from those positions are considered "state employees" and are entitled to participate in the State Group Program. La. R.S. 42:851 B. City and Parish School Boards may enter into private *93 contracts of insurance without the approval of the Board of Trustees. La. R.S. 42:851 A(1)(b). When these boards opt to participate in the State Group Program after having been covered by another program, they are required to remain as a participant in the State Group Program for a minimum of three years. La. R.S. 42:851 D.
The Louisiana Legislature passed Acts 1988, No.902, effective September 8, 1988, designated La. R.S. 42:851 A(5)(b)(iii), which describes the method of calculating the premiums for an entering school board group, referred to as "risk-rating":
If a school board elects to participate in [the State Group Program] after participation in another group health and accident program, the premium rate applicable to [school board participants] intended to be covered by the program shall be the greater of the premium rate based on the loss experience of the group under the prior plan or the premium rate based on the loss experience of the classification into which the group is entering.
Acts 1988, No. 1009 also amended and reenacted La R.S. 42:851(A)(5)(b) to authorize the Board to group risks into three or more classifications, specifically providing that "there may be one classification for employees of eligible school boards."
In the proceedings below, the parties stipulated to the following uncontested facts:
On September 15, 1988, the Board of Trustees met and adopted a resolution addressing the entry of school boards into the Program. Although the resolution was never promulgated as a formal Rule, it was also never utilized since no school boards sought entry into the Program until October 1, 1993. On April 18, 1991, the Board of Trustees adopted an emergency rule providing, in pertinent part, that "riskrating" of school boards entering the Program would be for a period of no longer than one year. A final rule implementing that provision was promulgated on September 20,1991.
The Monroe City School Board, the Tangipahoa Parish School Board, the St. Tammany Parish School Board and the Madison Parish School Board elected to participate in the Program, with effective dates between July 1991 and October 1992. Each school board was "risk-rated" for one year.
Thereafter, the Louisiana Legislature passed Acts 1992, No. 601, effective July 2, 1992, which became La. R.S. 42:881, providing as follows:
Notwithstanding any other provision of law to the contrary, if fifty percent or more of the employees of an entity which initially becomes a participant employer in the [State Group Program] on or after July 1, 1993, elect to be members of a health maintenance organization licensed to do business in this state, or on any successive July first following the initial enrollment of said entity, if more than fifty percent of the employees of said entity elect to participate in a health maintenance organization, the remaining employees of said entity participating in the health indemnity plan of the [State Group Program] shall be charged a premium rate for that fiscal year based upon their collective claims experience during the previous fiscal year, or that portion of the previous fiscal year during which they were members of the [State Group Program]. This Section shall have no effect upon entities participating in the [State Group Program] prior to July 1, 1993.
Prior to the enactment of Act 601, the Board of Trustees had no authority to "risk-rate" any entity other than school *94 boards, and the Board of Trustees was not "risk-rating" any group other than school boards.
On September 16, 1992, the Management Committee of the Board of Trustees met to discuss changes in the rules concerning school boards' entry into the Program after July 1, 1993. On October 8, 1992, the Board of Trustees adopted a resolution providing that effective July 1, 1993, all new entities that do not have greater than 50% participation in the Program would be "risk-rated" upon entry and would remain "risk-rated" until there was greater than 50% participation in the Program in accordance with Act 601. Although the Board of Trustees published a Notice of Intent regarding this resolution in the November 19, 1992 Louisiana Register, no final rule regarding this resolution was ever adopted or published in the Register.
Thereafter, the East Feliciana Parish School Board elected to participate in the Program, with an effective date of October 1, 1993. Fewer than 50% of the eligible participants in this group had chosen to join an HMO, and the group was not "riskrated."
The Vernon Parish School Board elected to participate in the Program, with a September 1, 1999 effective date, and its group was "risk-rated" from that date until August 31, 2000. At all times during that year, fewer than 50% of the Vernon Parish School Board participants chose to participate in an HMO, and at the time of entry into the Program, 100% of the Vernon Parish School Board's employees came into the Program.
The St. Landry Parish School Board elected to participate in the Program, with a January 1, 2000 effective date, and its group was "risk-rated" from that date until December 31, 2000. At all times during that year, fewer than 50% of the St. Landry Parish School Board participants chose to participate in an HMO.
At a meeting of the Board of Trustees in December 1999, representatives of the defendant School Boards requested that its participants not be "risk-rated" upon entry into the Program. The Board of Trustees denied this request and imposed premiums that were based upon the loss experiences of the group coverage from which each school board had departed. The resulting premiums were significantly greater than they would have been if the groups had not been "risk-rated."[3]
The Board of Trustees filed this suit asserting that the School Boards have demanded refunds of the premiums paid under the "risk-rating" concept. The Board of Trustees refused those demands, claiming that La. R.S. 42:851 A(5)(b)(iii) mandates the "risk-rating" which has occurred for these groups. Acknowledging that there is a substantial difference in the premiums depending upon whether La. R.S. 42:881 or La. R.S. 42:851 A(5)(b)(iii) governs the entering premiums for these school board participants, the Board of Trustees sought a declaratory judgment declaring that it was entitled to "risk-rate" these participants upon their the entrance into the Program. Both School Boards reconvened, seeking a return of the additional premiums paid, and all parties filed motions for summary judgment.
In ruling on the motions, the trial court found that La. R.S. 42:881 (Acts 1992, No. 601) was controlling and that the School *95 Boards qualified as entities that should not have been "risk-rated" when they entered the Program due to their participation in the HMO being less than 50%. The trial court reasoned that the introductory clause of Acts 1992, No. 601, "Notwithstanding any other provision of law to the contrary," encompassed the "risk-rating" provision of La. R.S. 42:851 A(5)(b)(iii), because school boards were the only group being "risk-rated" at the time Act 601 was enacted. The trial court further determined that because the Board of Trustees had applied Act 601 to the East Feliciana Parish School Board and had decided not to "risk-rate" that group, the doctrine of contemporaneous construction supported a finding that Act 601 was applicable to the defendant School Boards. The trial court denied the Board of Trustees' motion for summary judgment, granted the School Boards' motions, and ordered the Board of Trustees to refund $2,529,434 plus legal interest to St. Landry Parish School Board and $1,573,948 plus legal interest to Vernon Parish School Board.
The Board of Trustees has suspensively appealed the trial court's judgment, alleging the trial court erred in concluding that the School Boards' participants had been improperly "risk-rated." The Board of Trustees has assigned error to both the denial of its motion and the granting of the School Boards' motions for summary judgment.
The denial of the Board of Trustees' motion for summary is an interlocutory judgment that is generally not appealable during the progression of a suit. La. C.C.P. art. 968 and Comment (d); La. C.C.P. art.2083. It may be reviewed, however, in an appeal of the final judgment in the suit. People of the Living God v. Chantilly, 251 La. 943, 207 So.2d 752, 753 (La.1968); Devers v. Southern University, XXXX-XXXX (La.App. 1st Cir.4/8/98), 712 So.2d 199, 209. Because the trial court's judgment disposed of all of the relief prayed for by the parties, it is a final judgment. La. C.C.P. art. 1841. Therefore, it is appropriate for this court to review the trial court's denial of the Board of Trustees' motion for summary judgment in addition to reviewing the granting of the School Boards' motions.

II. THE PARTIES' CONTENTIONS
The parties generally agree that there are no disputed issues of material fact and that resolution of the motions for summary judgment hinge upon whether La. R.S. 42:851 A(5)(b)(iii) (Acts 1988, No. 902, § 1) or La. R.S. 42:881 (Acts 1992, No. 601) is controlling in determining whether the School Board participants are subject to "risk-rating" during their first year of participation in the Program.
The Board of Trustees contends that Acts 1988, No. 902 governs the school board participants' entry into the Program during 1999 and 2000. Under the "riskrating" provisions of Act 902, the premiums charged to an entering school board group are based actuarily upon the loss experience of that group. The Board of Trustees asserts the trial court committed a fundamental error in concluding that the enactment of Acts 1992, No. 601 resulted in an implied repeal of the 1988 legislation. The Board of Trustees argues that Act 902 specifically governs school board participants and "risk-rating" while Act 601 is more general in nature. It urges that the latter provision generally provides an additional basis for "risk-rating" some of the employees of "an entity" choosing to participate in the State Group Program when participation in an HMO exceeds a certain enrollment level. The Board of Trustees further argues that the two statutes do not conflict and that the statute that is more specifically directed to the matter at issue *96 should prevail over the statute that is more general in nature.
The Board of Trustees also argues that the principles of contemporaneous construction do not dictate a particular result solely because it did not "risk-rate" the East Feliciana Parish School Board upon its entrance into the program in October 1993. It asserts that if Acts 1992, No. 601 did not in fact change the 1988 legislative mandate to "risk-rate" all entering school board participants regardless of the 50% "floor" rule, then the Board of Trustees was not authorized to pass a resolution to the contrary.
Additionally, the Board of Trustees asserts there was a good reason for the legislature to treat the school board groups differently than other groups for purposes of "risk-rating":
Since school boards were entitled to opt out of State Group when it began (a privilege not available to other entities) and since the employees of school boards are entitled to be treated as state employees for these purposes even though they actually are not, some special rules for [school board groups] are justifiable. When it was in their actuarial interest to do so, school board employees could choose to remain outside of State Group and pay lower premiums than those who were inside State Group. When their actuarial interest dictated entry into State Group (that is, when their premiums exceeded those that would be charged by State Group for similar coverage), they were statutorily entitled to enterbut not in such a way that would require the long-term participants in State Group to "subsidize" their entry when risk rating would result in a higher premium for the short period of one year.
Thus, the Board of Trustees contends that the School Board should be "risk-rated" based on principles of actuarial soundness and to promote fairness to long-term participants of the Program's indemnity plan.
The School Boards contend that Acts 1992, No. 601 is controlling and that because fewer than 50% of its participants elected to enroll in an HMO, they should not have been "risk-rated." The School Boards argue that because Act 601 contains the introductory clause of "notwithstanding any other provisions of law to the contrary," the Act clearly provides that "risk-rating" is only authorized when 50% or more employees of an entity joining the Program are enrolled in an HMO. Thus, their argument is that Acts 1992, No. 601 implicitly repealed the provisions of Acts 1988, No. 902 regarding "risk-rating" of school boards. Otherwise, the School Boards argue that if Act 601 is not applied to them, no effect is given to this introductory clause. Also in support of their position, the School Boards argue that the trial court correctly reasoned that a school board is an "entity" as encompassed within the meaning of Act 601.
The School Boards further argue that the Board of Trustees had not been "riskrating" any group other than school boards prior to the passage of Act 601 and that the Board of Trustees acknowledged that Act 601 changed the law when it failed to "risk-rate" the East Feliciana Parish School Board. The School Boards also contend that the legislature intended that Act 601 would apply to school boards.

III. ANALYSIS

A. Summary Judgment Law and Standard of Review
Summary judgment procedure is favored in Louisiana. La. C.C.P. art. 966 A(2). A motion for summary judgment shall be granted when the mover can show "that there is no genuine issue as to material *97 fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 B. In the present case, we address only a legal issue since there are no material issues of fact that are disputed. When addressing a legal issue, a reviewing court gives no special weight to the findings of the trial court. It conducts a de novo review of questions of law and renders a judgment on the record. Campbell v. Markel American Ins. Co., XXXX-XXXX (La.App. 1st Cir.9/21/2001), 822 So.2d 617, 620, writ denied, 2001-2813 (La.1/4/02), 805 So.2d 204.

B. Statutory Construction
Statutory interpretation is the province of the judicial branch of State government. Hoag v. State, XXXX-XXXX, p. 8 (La.App. 1st Cir.11/20/02), 836 So.2d 207. Our interpretation is guided by various principles pertaining to statutory construction. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of legislative intent. La. C.C. art. 9; La. R.S. 1:4. Further, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. And when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
Pursuant to the standard rules for statutory construction developed in the jurisprudence: 1) it is presumed that every provision of law was intended to serve some useful purpose; 2) it is not presumed that the lawmaker intended for any part of a law to be meaningless; 3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; 4) it is the duty of the courts to interpret a provision of law which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and 5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory. Hoag v. State, XXXX-XXXX, pp. 30-31; 836 So.2d 207. Additionally, rendering the whole, or a part, of a law meaningless is the last option available to a court when it interprets a law. Id. at pp. 31, 836 So.2d 207. Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. Progressive Sec. Ins. Co. v. Foster, 1997-2985 (La.4/23/98), 711 So.2d 675, 684.
Also pertinent is the general law on repeal by implication as set forth in State v. Craig, 1993-2515 (La.5/23/94), 637 So.2d 437, 443:
Repeals by implication require a determination of whether there is some indication of a legislative "intention to repeal" the statutes in question. State v. Randall, 219 La. 578, 53 So.2d 689, 691 (1951). Such implied repeals are "not favored and will not be indulged if there is any other reasonable construction." State v. Standard Oil of La., 188 La. 978, 178 So. 601, 626 (1973)[1937]. A repeal by implication requires "nothing short of irreconcilable conflict between two statutes." Id.

C. Effect of Acts 1992, No. 601 on Acts 1988, No. 902
In the present case, the parties' contentions demonstrate that the two statutory *98 provisions under consideration are not entirely free from ambiguity regarding the practice of "risk-rating" as applied to school boards. But we also find in this instance that a review of the legislative history pertaining to Acts 1992, No. 601 does not clarify a specific legislative intent to change the practice of "risk-rating" school boards that had been in effect since 1988, as suggested by the School Boards. Thus, in keeping with the rules addressing statutory construction, we find that the legislature intended that both statutory provisions would have effect and that Act 601 did not implicitly repeal the existing legislation addressing "risk-rating" of school boards.
Act 601 of 1992 began as Senate Bill No. 352 of the 1992 Regular Session. As originally introduced, the bill did not address the concept of "risk-rating" but merely prohibited employees of an entity from participating in the Program if 50% or more of the employees of that entity were members of an HMO. The bill was assigned to the Senate Committee on Insurance. An amendment was proposed providing that initial entry was contingent upon less than 50% participation in the HMO, and after initially entry into the plan, if a group's HMO enrollment increased to more than 50%, "risk-rating" would be imposed upon the remaining indemnity plan participants. The following excerpt from the April 29, 1992 minutes of the Insurance Committee meeting indicates that the legislature considered the impact of HMO enrollments on the viability of the Program's indemnity plan:
Senate Bill No. 352 by Senator Hollis provides for eligibility in the State Employees Group Benefits Program for certain entities with employees participating in a HMO or PPO.
Senator Hollis explained the amendment to the bill which is the basis of the plan. He stated that one of the problems in group benefits is the fact that HMOs are coming in and taking the healthy, young people and the indemnity plan is left over. This would only apply to new agencies coming into the plan. It would provide that these agencies must first of all have no more than fifty percent participation in the HMO. If, after they come in, the group drops below the fifty percent standard, the remaining employees will have to pay premiums calculated according to their group's claims, rather than the statewide premiums currently paid by employees.
The bill was amended, as proposed, and ordered to the House. In the House, the matter was referred to the Committee on Appropriations, where further amendments were considered and adopted to provide for "risk-rating" of participating employees rather than the prohibition of membership when HMO enrollment was 50% or greater. As amended, the bill was ultimately enrolled as Act No. 601. The following excerpts of the minutes before the House Committee are relevant:
Senator Hollis indicated that there are amendments to Senate Bill No. 352. Jean Vandal explained that the amendments provide that in the event of 50% of employees in a state agency joining a[HMO], the remainder of the employees will be considered and rated prior to their acceptance into the group benefits plan.
. . . .
Senator Hollis further explained that if the membership in the HMO is less than the 50%, the remainder group will not be rated.
Representative Long asked if the amendments being offered were prompted by the objections of the education group. Mr. Plaisance confirmed as *99 much as possible while still protecting the current members of [State Group].
These minutes evidence that the impetus for the proposed amendment may have originated from the "education group" or the school board coalition. However, because Senate Bill No. 352, as originally proposed, would have resulted in denial of membership to the school boards in certain instances, it is logical that the school boards would have opposed it and that the legislature may have adopted these amendments in part because of their opposition. It is not logical to assume, however, that the legislature necessarily intended that these amendments would nullify the "risk-rating" scheme already in effect for school boards under Act. No. 902. The legislative history contains no such discussion but rather reveals a primary interest of protecting the Program's indemnity plan from the negative effects of increased participation in the HMO plans by authorizing "risk-rating" for any participating group when 50% or more of the group is enrolled in an HMO.
Applying the rules pertaining to statutory construction, we conclude that the legislature used the language, "Notwithstanding other provisions of law to the contrary" to establish that there would be no exceptions to "risk-rating" if the 50% floor requirement (for any group entering or participating in the indemnity plan) was not met. Thus, without exception, if enrollment in HMO plans was 50% or greater, the group's remaining participants would be "risk-rated." All Program participants, including groups other than school boards, are subject to this general provision of law.[4]
Implicitly, Act 601 also sets forth the converse general principle that if the group's enrollment in HMO plans is less than 50%, the group's remaining participants will not be "risk-rated." But Act 601 does not set forth that this converse rule is without exception. La. R.S. 42:851 A(5)(b)(iii) (Acts 1988, No. 902), the more specific legislation applicable to school boards, in effect, maintains an exception to that general rule. The legislative history does not reveal a contrary intent.[5] Indeed, we find no indication that the legislature intended to repeal La. R.S. 42:851 A(5)(b)(iii). We must presume that the legislature had full knowledge of the 1988 legislation when it enacted the 1992 legislation and intended that both provisions of law would be given effect. Accordingly, because both provisions of law can be given reasonable and practical effect, we find that Act 902 of 1988 was applicable to the defendant School Boards upon their entrance into the Program and that the Board of Trustees properly "risk-rated" them.[6]

D. Contemporaneous Construction
Additionally, we find no merit in the School Boards' arguments regarding *100 application of the doctrine of contemporaneous construction. Under this doctrine, when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is given substantial and often decisive weight in the legislation's interpretation. State v. BP Exploration & Oil, Inc., 96-0716 (La.1/14/97), 686 So.2d 823, 828. The facts do not establish that the Board of Trustees consistently interpreted Acts 1992, No. 601 to provide that school boards entering the Program would not be "risk-rated" when the group had 50% or less participation in HMO plans; there was only one instance in which the Board of Trustees applied the Act in this manner, i.e., when it did not "risk-rate" the East Feliciana Parish School Board. Further, while contemporaneous administrative construction of statutes administered by that agency is a persuasive indication of the true meaning of a statute, an administrative interpretation cannot be contrary to the legislative will as expressed in those statutes, and determination of the legislative intent is a judicial matter. Sales Tax District No. 1 v. Express Boat Co., 500 So.2d 364, 370 (La.1987); Boyd v. Louisiana Real Estate Com'n., 581 So.2d 304, 306 (La.App. 1st Cir.1991). An administrative construction cannot have weight where it is contrary to or inconsistent with the statute. Jurisich v. Jenkins, XXXX-XXXX (La.10/19/99), 749 So.2d 597, 602, citing Traigle v. PPG Indus., Inc., 332 So.2d 777, 782 (La.1976).
Accordingly, because we find the legislature intended that both Acts 1988, No. 902 and Acts 1992, No. 601 would be given effect and that Act 902 specifically regulates "risk-rating" of school boards, we find that the Board of Trustees' failure to "risk-rate" the East Feliciana Parish School Board is not determinative of whether Act 902 is applicable to the defendant School Boards.

IV. CONCLUSION
For the above reasons, we find that the Board of Trustees has established it is entitled to judgment as a matter of law. Accordingly, we reverse the trial court's judgment in all respects. We render judgment in favor of the Board of Trustees, declaring that Acts 1988, No. 902 (former La. R.S. 42:851 A(5)(b)(iii)) was applicable to the defendant School Boards upon their entrance into the Program and that the Board of Trustees properly "risk-rated" them under the provisions of that Act. The Vernon Parish and St. Landry Parish School Boards are each assessed with appeal costs in the amount of $388.75.
REVERSED AND RENDERED.
NOTES
[1] Unless otherwise noted, all subsequent references to La. R.S. 42:851 and 42:881 address these statutory provisions as they read prior to their amendment and reenactment by Acts 2001, No. 1178, § 5, which is not applicable to the issue raised in this case.
[2] After this suit was filed, the powers of the Board of Trustees were transferred to the Office of Group Benefits within the Division of Administration. La. R.S. 36:4 and 42:801.
[3] Vernon Parish School Board paid $1,573,948 more than it would have paid if it had not been "risk-rated." St. Landry Parish School Board paid $2,529,434 more than it would have paid if it had not been "riskrated." These sums were paid by the respective school board and not by the individual participants.
[4] Since school boards were already subject to "risk-rating," the legislation finally enacted was more favorable for the school boards than the initial Senate bill proposal, which would have mandated that all entities, including school boards, would not have been eligible to participate in the plan if the HMO participation was 50% or higher.
[5] We disagree with the contrary analysis set forth in Louisiana Attorney General Opinions No. 00-22 (March 30, 2000) and No. 00-44 (April 10, 2000).
[6] Although not determinative of the issue before us, we note that the law currently provides for "risk-rating" of all state departments, agencies, school boards, political subdivisions or other public entities electing to participate in the state group health and accident insurance program after participating in another group health and accident program. La. R.S. 42:851 A(4)(b)(iii).