845 So.2d 558 (2003)
CITGO PETROLEUM CORPORATION
v.
STATE of Louisiana Through the DEPARTMENT OF REVENUE AND TAXATION and John N. Kennedy, in his Capacity as Secretary of Revenue and Taxation.
No. 2002 CA 0999.
Court of Appeal of Louisiana, First Circuit.
April 2, 2003.
Writ Denied June 27, 2003.
*559 Frank Simoneaux, Baton Rouge, Counsel for Plaintiff/Appellant CITGO Petroleum Corporation.
Stephen Marx, Metairie, Counsel for Defendant/Appellee Department of Revenue and Taxation.
Before: KUHN, DOWNING and GAIDRY, JJ.
DOWNING, J.
CITGO Petroleum Corporation (CITGO) appeals an adverse judgment rendered pursuant to its and the Louisiana Department of Revenue and Taxation's (Department's) cross-motions for summary judgment. The judgment granted the Department's motion for summary judgment and dismissed CITGO's lawsuit with prejudice. The sole issue on this appeal is whether CITGO was entitled to claim income tax deductions and franchise tax credits for sums it paid to Calcasieu Parish pursuant to an agreement between CITGO and Calcasieu Parish to activate a Foreign Trade Zone. For the following reasons, we reverse the judgment of the trial court and render judgment in favor of CITGO.

FACTS AND PROCEDURAL HISTORY
On December 6, 1990, Calcasieu Parish adopted a resolution authorizing activation of a Foreign Trade Zone in which CITGO could operate a refinery and maintain inventory under favorable circumstances.[1] Before Calcasieu Parish would agree to activate the Foreign Trade Zone, however, it required CITGO to agree to ensure that the Parish would not suffer a loss to its tax base as a result of the activation. Calcasieu Parish agreed to activate the Foreign Trade Zone after CITGO gave the following assurances central to the decision of this matter:
CITGO Petroleum Corporation and Cit-Con Oil Corporation agree to maintain in their Ad Valorem tax base, an assessment value equal to the inventory assessment as reported for the assessment year 1990, as an "Additional Assessment."
The Foreign Trade Zone was activated on July 1, 1991. The tax years in dispute are 1992 and 1993. In its Louisiana 1992 income/1993 franchise tax return and in its 1993 income/1994 franchise tax return, CITGO claimed income tax deductions and tax credits for the sums it paid to Calcasieu Parish pursuant to their agreement. The Department, however, denied these deductions and tax credits and assessed additional income and franchise taxes against CITGO in the amounts disallowed.
CITGO paid the additional tax under protest and filed the underlying lawsuit, seeking reimbursement of taxes it had paid. On cross-motions for summary judgment, the trial court granted the Department's motion for summary judgment and denied CITGO's motion for summary judgment. Judgment was signed accordingly, and CITGO appealed assigning one error, that the trial court erred as a matter of law in granting the Department's motion for summary judgment and in denying its motion for summary judgment.

DISCUSSION

Characterization of CITGO's Payments
Under the agreement between CITGO and Calcasieu Parish, the sums of *560 money CITGO paid to Calcasieu Parish were tax payments for which CITGO should be allowed to claim income tax deductions and franchise tax credits.
The tax may or may not have been legally levied. CITGO may or may not be entitled to waive its federal exemption from ad valorem taxes. Payments in lieu of taxes may or may not be the same as taxes for state assessment purposes. We need not decide these issues here. What we do decide is the legal issue of whether Calcasieu Parish was assessing and whether CITGO was paying ad valorem taxes for which it is entitled to claim state tax deductions and tax credits.[2]
Whether a charge is a tax or not is "determined not by its title, but by its incidents, attributes and operational effect. Thus, the nature of a charge must be determined by its substance and realities, not its form." Safety Net for Abused Persons v. Segura, 96-1978, p. 4 (La.4/8/97), 692 So.2d 1038, 1041. "A charge that has as its primary purpose the raising of revenue, as opposed to the regulation of public order, is a tax." Safety Net, 96-1978 at p. 5, 692 So.2d at 1041.[3]
In the matter before us, it is undisputed that Calcasieu Parish's primary concern was loss of revenue from CITGO if the parish were to activate the Foreign Trade Zone. Correspondence from and between officials of Calcasieu Parish show that approval was denied until CITGO could satisfactorily prevent the diminishment of the ad valorem tax collection. In CITGO's letter of agreement, it recited that it would maintain property in its ad valorem tax base. This agreement was recited in the enacting resolution wherein Calcasieu Parish endorsed the activation of the Foreign Trade Zone. In that resolution, Calcasieu Parish acknowledged that it "was concerned about the potential adverse impact on taxing entities" and that it had entered an "agreement providing for tax base stability." The record reflects that CITGO listed the agreed inventory on the appropriate tax forms, that the tax was levied as a tax, and that CITGO's check stubs reflect payment of a tax. The undisputed affidavits of the Calcasieu Parish tax assessor and CITGO's tax manager assert they both considered the payments ad valorem taxes.
Looking at the nature of CITGO's payments and CITGO's agreement to retain property in its ad valorem tax base, and observing that the principal purpose of CITGO's payments was the maintenance of tax revenue for Calcasieu Parish, we conclude the payments were ad valorem taxes. Accordingly, CITGO's claim was an allowable income tax deductions under La. R.S. 47:287.63[4] and CITGO was entitled to take the appropriate franchise tax credit under La. R.S. 47:6006.[5]

*561 Contentions of the Parties

A. The Department's Contentions

The Department argues that CITGO's payments could not be taxes because Calcasieu Parish had no right to collect a tax under the express terms of 19 U.S.C. § 81o(e), which provides:
(e) Exemption from State and local ad valorem taxation of tangible personal property. Tangible personal property imported from outside the United States and held in a zone for the purpose of storage, sale, exhibition, repackaging, assembly, distribution, sorting, grading, cleaning, mixing, display, manufacturing, or processing, and tangible personal property produced in the United States and held in a zone for exportation, either in its original form or as altered by any of the above processes, shall be exempt from State and local ad valorem taxation. (Emphasis added.)
The Department cites no law, and we can find none, supporting the proposition that a tax cannot be a tax if unlawfully levied. We specifically do not decide the issue of whether Calcasieu Parish lawfully levied the tax against CITGO, and we could not properly decide the matter without Calcasieu Parish's involvement as a party. We do disagree, however, with the Department's assertion that CITGO's payment could not be characterized as a tax if Calcasieu Parish had no legal right to levy a tax.
The Department also argues that CITGO's payments were payments in lieu of taxes and, thus, do not qualify for state income tax deductions or franchise tax credits. We have already decided that CITGO's payments were tax payments. Even so, we note that payments in lieu of taxes are generally intended to "compensate... authorities for any services rendered by them to such projects ...." See, e.g., La. R.S. 33:130.606, La. R.S. 33:4710.6, La. R.S. 39:996, and La. R.S. 51:1160. Since CITGO's payments to Calcasieu Parish were intended to maintain revenue and not reimburse the Parish for services, we disagree with the Department's characterization of the payments as payments in lieu of taxes.
Even so, not every imposition of a charge or fee by a government is a tax: "If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. In similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society." (Citations omitted.) Audubon Ins. Co. v. Bernard, 434 So.2d 1072, 1074 (La.1983).
But is it settled principle that such assessments are supposed to be equivalent to the value of the special benefits afforded. See Louisiana Ry. & Navigation Co. v. Madere, 124 La. 635, 638, 50 So. 609, 610 (1909), citing Cooley on Taxation, p. 456. Here, however, the uncontradicted evidence indicates that Calcasieu Parish's purpose was maintenance of revenue, and *562 there is no evidence in the record correlating the amount of the assessment with cost of services to CITGO.
In this regard, the Department's example of fees paid by Indian casinos to the state government is inapposite. 25 U.S.C. § 2710(d)(3)(C)(iii) allows a State-Indian compact to provide for "the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity." (Emphasis added.) 25 U.S.C. § 2710(d)(4) further provides: "Except for any assessments that may be agreed to under paragraph (3)(C)(iii) of this subsection, nothing in this section shall be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity." In brief, the Department acknowledges that the state compacts with Indian tribes require payments "to defray the expense of police, road work, etc. associated with the casino." Here there is no evidence that CITGO's payments to Calcasieu are any type of fee to defray such expenses.
Further, some assessments are also authorized by statute to provide for the health, welfare and safety of the public, such as assessments for garbage collection. See City of Lake Charles v. Wallace, 247 La. 285, 300-301, 170 So.2d 654, 659-660 (1964). Such charges are not taxes but the price paid for the commodity sold. See City of Lake Charles, 247 La. at 302, 170 So.2d at 660, citing 51 Am.Jur. Taxation, § 16, pp. 48-49. Here, however, there is no evidence in the record demonstrating, and the Department does not suggest, that Calcasieu Parish was collecting the money as the cost for any exercise of its police power.
The Department does suggest, however, that CITGO's payments were voluntary payments, or donations, to Calcasieu Parish. The record contradicts this contention. The payments were made pursuant to CITGO's agreement to retain property in its ad valorem tax base.
Accordingly, we disagree that CITGO's payments to Calcasieu Parish were payments in lieu of taxes, voluntary payments, or anything other than tax payments.

B. CITGO's Contentions[6]
CITGO argues that it has waived its exemption under 19 U.S.C. § 81o(e) and has submitted itself to Calcasieu Parish's ad valorem tax. This exemption, set out in full above, provides that CITGO's property held within the Foreign Trade Zone "shall be exempt from State and local ad valorem taxation." However, since resolution of whether CITGO can legally waive this mandatory federal tax exemption is not determinative here, we decline to decide this issue.
CITGO also argues that the Internal Revenue Service treats payments in lieu of taxes (had we decided CITGO's payments were of this character) as payments of tax. It cites several Private Letter Rulings in support of its position.[7] We decline to *563 address this argument since we characterize CITGO's payments as payment of ad valorem tax. We also note that while the reasoning in these Private Letter Rulings may have persuasive authority, IRS interpretations are not binding on this court or on the Department.

Rulings on Summary Judgment
Summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole issue remaining is the conclusion to be drawn from the relevant facts. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 29 (La.7/5/94), 639 So.2d 730, 752, appeal after remand, 96-1837 (La.9/27/96), 680 So.2d 1163. Here the parties stipulate that the facts are undisputed. And based on these undisputed facts, the Department is not entitled to summary judgment being entered in its favor. Accordingly, we reverse the judgment of the trial court granting summary judgment in favor of the Department and against CITGO.
CITGO also asks us to reverse the trial court's denial of its motion for summary judgment. But, the denial of a motion for summary judgment is an interlocutory judgment that cannot be appealed, and, since no writ application has been filed, the issue is not properly before us. Trahan v. Rally's Hamburgers, Inc., 96-1837, p. 9 (La.App. 1 Cir. 6/20/97), 696 So.2d 637, 642. See also La. C.C.P. art. 968, which states in pertinent part: "An appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment." See also Towles v. Heirs of Morrison, 428 So.2d 1029 (La.App. 1 Cir. 1983) where this court stated: "A trial court's denial of a motion for summary judgment is not reviewable even upon appeal from a final judgment on the merits."[8] (Emphasis added.)
Nonetheless, we do have authority to exercise supervisory jurisdiction and treat the appeal of the denial of CITGO's motion for summary judgment as an application for supervisory writs. See Trahan v. Prudential Property & Casualty Ins. Co., 97-2470, p. 3 (La.App. 1 Cir. 5/14/99), 739 So.2d 811, 813. In the interest of judicial economy, where our review of the denial of a motion for summary judgment in this case will bring finality to the litigation below, we exercise our discretion and convert CITGO's appeal of the denial of its motion for summary judgment as an application for supervisory writs.
Here, CITGO asked for summary judgment on its entitlement to take certain income tax credits under La. R.S. 47:287.63 and to take appropriate corporation franchise tax credits under La. R.S. *564 47:6006. Having concluded that CITGO's payments to Calcasieu Parish were taxes, and not some other type of payment, we agree that CITGO is entitled to summary judgment in its favor.[9] Accordingly, CITGO is entitled to a refund of all the taxes it paid under protest in connection with this matter in the amount of $1,215,567.10, together with interest from the date of payment under protest. CITGO is also entitled to a refund of $196,010.00, reflecting the difference between the credit of $301,563 to which it was entitled and the $105,553.00 credit it claimed, together with interest from the date CITGO paid such amounts in protest.

DECREE
For reasons stated, we reverse the judgments of the trial court, declaring that CITGO's payments at issue to Calcasieu Parish were tax payments and not payments in lieu of taxes. We further convert CITGO's appeal of the denial of its motion for summary judgment into a writ, which we grant. We render judgment in favor of CITGO, ordering the Department to refund all the taxes CITGO paid under protest in connection with this matter in the amount of $1,215,567.10, together with interest from the date of payment under protest and further ordering the Department to refund to CITGO the amount of $196,010.00, together with interest from the date CITGO paid such amounts in protest. Costs in this matter are taxed to the Louisiana Department of Revenue and Taxation in the amount of $ 1,270.79.
KUHN and GAIDRY, JJ., concur.
REVERSED; WRIT GRANTED; JUDGMENT DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REVERSED; JUDGMENT RENDERED IN PLAINTIFF'S FAVOR GRANTING MOTION.
NOTES
[1] Foreign Trade Zones are authorized by 19 U.S.C. § 81b. A Foreign Trade Zone is an area located in or adjacent to a United States Customs port of entry. These zones are designed to provide areas exempt from United States Customs law. These Zones are treated as being outside the customs territory of the United States. Thomas Schaumberg, Commentary, Overview of Chapter 1A. Foreign Trade Zones, Nat. Inst. for Trial Advoc., 19 U.S. NITA prec § 81a (2002).
[2] Both parties agree that there are no factual issues in dispute and that this legal question, more or less as articulated, is the sole matter for us to decide.
[3] But the fact that an assessment or service fee may generate incidental revenue does not necessarily make an assessment or fee a tax. See City of Lake Charles v. Wallace, 247 La. 285, 303, 170 So.2d 654, 660 (1964), citing Glass v. City of Fresno, 17 Cal.App.2d 555, 62 P.2d 765 (1936).
[4] La. R.S. 47:287.63 Allowable deductions defined

"Allowable deductions" for a taxable year means the deductions from federal gross income allowed by federal law in the computation of taxable income of a corporation for the same taxable year, subject to the modifications specified in this Part.
[5] Effective at all pertinent times, La. R.S. 47:6006, provided in pertinent part as follows:

A. There shall be allowed a credit against the corporate and personal income taxes and corporation franchise tax for ad valorem taxes paid to political subdivisions on inventory held by manufacturers, distributors, and retailers....
B. Credit for taxes paid by corporations shall be applied to state corporate income and corporation franchise taxes....
. . . .
D. The credit provided in this Section shall be allowed as follows:
(1) For inventory taxes paid to political subdivisions on or after July 1, 1992, and before June 30, 1993, the credit shall be twenty percent of such taxes paid.
[6] With permission of this court, Marathon Oil Company filed an amicus curiae brief in support of CITGO's appeal. Marathon claims a substantial interest in the outcome of this case because it claims our decision today will likely impact litigation in which it is a party seeking refund of corporation franchise taxes paid under protest under similar circumstances to those before us. Marathon's brief raises the same issues as CITGO and adds additional authority for CITGO's arguments.
[7] In response to this argument, the Department filed a motion for leave of court to attach to its brief a memorandum from the Internal Revenue Service arguably relevant to the issue. We grant the Department's motion to attach the memorandum to its brief. We note, however, that the memorandum is not admitted into evidence or filed into the record.
[8] We are aware of a line of cases beginning with Devers v. Southern University, 97-0259, p. 16 (La.App. 1 Cir. 4/8/98), 712 So.2d 199, 209 proposing that a summary judgment can be appealed with the final judgment in the case. Employing this principle, several recent cases, including one recently rendered by this panel, have asserted that it is proper to challenge the denial of a motion for summary judgment in connection with the appeal of a final judgment granting summary judgment. See Industrial Indemnity Co. of the Northwest v. Central National Ins. Co. of Omaha, 99-2535, p. 8 (La.App. 1 Cir. 12/22/00), 775 So.2d 1246, 1250; Pitts v. Fitzgerald, 01-0543, p. 5 n. 8 (La.App. 1 Cir. 5/10/02), 818 So.2d 847, 850 n. 8; Board of Trustees of State Employees Group Benefits Program v. The St. Landry Parish Board, et al, 02-0393, p. 8 (La.App. 1 Cir. 2/14/03), 844 So.2d 90, 92. These decisions, while laudatory in their purpose of promoting judicial efficiency, are in conflict with the clear terms of La. C.C.P. art. 968 and with established First Circuit jurisprudence.
[9] In its brief on appeal, the Department states that the numbers are not in dispute. It suggests, however, that CITGO pursue its refund of $196,010 by amended return and request for a refund. In its motion for summary judgment, however, CITGO requested a refund in this amount. The Department did not oppose or contradict CITGO's entitlement to this amount should it prevail on its summary judgment motion. Accordingly, in the interest of justice and in accordance with the facts and pleadings, we render judgment on this undisputed issue here.