923 So.2d 8 (2005)
PARISH NATIONAL BANK
v.
James A. WILKS, Jacquelyn Nata, Shelly Wilks and Malise Prieto.
No. 2004 CA 1439.
Court of Appeal of Louisiana, First Circuit.
August 3, 2005.
*10 Patrick K. Reso, Glen R. Galbraith, Hammond, for Plaintiff  Appellant Parish National Bank.
Ernest S. Anderson, Slidell, for Defendants  Appellees James A. Wilks, Jacquelyn Nata and Shelly Wilks.
Malise Prieto, Clerk of Court, Covington, In Proper Person Appellee.
Before: PARRO, KUHN, and WELCH, JJ.
WELCH, J.
This is an appeal by the plaintiff, Parish National Bank ("PNB"), from a summary judgment granted in favor of the defendants, James A. Wilks, Jacquelyn Nata, and Shelly Wilks, wherein the trial court found that PNB's revocatory action against the defendants had prescribed and therefore dismissed the action. Finding that the revocatory action was not prescribed but that genuine issues of material fact preclude summary judgment, we reverse in part and affirm in part, the judgment of the trial court.

FACTUAL AND PROCEDURAL HISTORY
On March 2, 2002, James A. Wilks and Jacquelyn Nata, who were married to one another but living separate and apart, donated two parcels of property ("act of donation") to their daughter, Shelly Wilks. These two parcels of property are located in St. Tammany Parish and are hereinafter referred to as the College Street residence and the Central Park Subdivision property.[1] On March 4, 2002, the act of donation was recorded in the conveyance records of St. Tammany Parish.
On July 26, 2002, PNB obtained a judgment confirming a preliminary default against James Wilks in the amount of $7,662.75, plus interest and attorney's fees. This judgment was obtained by PNB in a suit on an open account against James Wilks for a credit card account James Wilks had with PNB. The charges on this credit card were incurred prior to the execution of the act of donation.
After James Wilks failed to make any payments in satisfaction of the judgment, PNB filed a motion for the examination of a judgment debtor. At the judgment debtor examination, James Wilks testified that he had no assets other than his wristwatch. The record is unclear as to the date of this judgment debtor examination, as the record contains references to a judgment debtor examination held on January 16, 2003, and on April 28, 2003.[2]
Thereafter, on June 26, 2003, PNB filed this revocatory action against James *11 Wilks, Jacquelyn Nata, and Shelly Wilks,[3] seeking to set aside the act of donation of the two parcels of property that James Wilks and Jacquelyn Nata made to their daughter, alleging that the act of donation was done with the intent of depriving PNB of its rights as a creditor to execute on the property of James Wilks. Additionally, it alleged that since James Wilks had no other assets, the act of donation to his daughter rendered him insolvent. Accordingly, PNB requested that the act of donation be revoked and declared a nullity and that it be canceled and erased from the public records.
The defendants answered the suit, essentially denying the allegations made by PNB and affirmatively asserting that the donation did not result in any injury to PNB, due to other ownership interests, encumbrances, and exemptions that were related to the two parcels of property.
PNB then filed a motion for summary judgment on the basis that there were no genuine issues of material fact as to any of the elements of its revocatory action, and therefore, it was entitled to judgment as a matter of law, revoking the donation of the two parcels of property and returning them to the patrimony of James Wilks. The defendants responded by filing a cross motion for summary judgment on the basis that there were no genuine issues of material fact in that (1) PNB had brought this revocatory action more than one year after the act of donation was filed in the conveyance records, and therefore, in accordance with La. C.C. art. 2041, it had prescribed; and (2) due to other ownership interests, encumbrances, and exemptions applicable to the two parcels of property, there is an absence of factual support showing that PNB was injured or prejudiced by the act of donationan element essential to this revocatory actionand therefore, the defendants were entitled to judgment dismissing PNB's action.
On January 21, 2004, the trial court rendered judgment finding that PNB's revocatory action had prescribed, and thus, there were no genuine issues of material fact regarding the claim of PNB against the defendants and that the defendants were entitled to judgment as a matter of law dismissing, with prejudice, the claims of PNB. A written judgment to this effect was signed on February 3, 2004,[4] and it is from this judgment that PNB has appealed.[5]

ASSIGNMENTS OF ERROR
In its appeal, PNB makes the following assignments of error:
1. The trial court erred in finding that prescription under La. C.C. art. 2041 ran from the date an act was recorded in the public records rather than the date the creditor should have learned of the act.
2. The trial court erred in failing to grant the plaintiff's motion for summary judgment.[6]

*12 SUMMARY JUDGMENT LAW
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Craig v. Bantek West, Inc., XXXX-XXXX (La.App. 1st Cir.9/17/04), 885 So.2d 1241, 1244; Western Sizzlin Steakhouse v. McDuffie, XXXX-XXXX (La.App. 1st Cir.3/28/03), 844 So.2d 355, 357, writ denied, XXXX-XXXX (La.6/20/03), 847 So.2d 1236. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. La. C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Robles v. ExxonMobile, XXXX-XXXX (La.App. 1st Cir.3/28/03), 844 So.2d 339, 341. When appropriate, the issue of prescription may be raised by a motion for summary judgment. Doe v. Jones, 2002-2581 (La.App. 1st Cir.9/26/03), 857 So.2d 555, 557.[7]
*13 In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230; Allen v. State ex rel. Ernest N. Morial New Orleans Exhibition Hall Authority, XXXX-XXXX (La.4/9/03), 842 So.2d 373, 377. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482 (La.App. 1st Cir.11/19/03), 868 So.2d 96, 97, writ denied, XXXX-XXXX (La.2/20/04), 866 So.2d 830. The review of a motion for summary judgment raising the issue of prescription is conducted in the same manner.[8]Doe, 857 So.2d at 557-58.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038 (La.App. 1st Cir.9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637. Thus, we now discuss the law applicable to this case.

PRESCRIPTION
The revocatory action derives from La. C.C. art. 2036, which provides that an obligee has a right to annul an act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency. An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets. La. C.C. art. 2037. The prescriptive period for the revocatory action is set forth in La. C.C. art. 2041, which provides: "The action of the obligee must be brought within one year from the time he learned or should have learned of the act ... of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result."
In this case, the act PNB seeks to annul is the March 2, 2002 act of donation. Thus, PNB had to bring its revocatory action within one year from the time that it learned or should have learned of that act of donation. The defendants argue that PNB did not do so, and hence, its action is prescribed, whereas PNB contends that it did bring this revocatory action within one year from the date that it learned of the act of donation.
The defendants contend that PNB should have learned of the act of donation on March 4, 2002, when it was recorded in the conveyance records. Therefore, when PNB filed the present revocatory action on June 26, 2003, the one-year prescriptive period had already run, and thus, its action had prescribed. In support of their position, the defendants cite La. C.C. art. 1839 and La. R.S. 9:2721, which provide that an instrument or document involving immovable property shall have effect against third persons only from the time it is filed *14 for registry in the parish where the property is located ("the public records doctrine"). Thus, they contend that PNB had constructive knowledge of the act of donation when it was filed for registry in the conveyance records.
As further support for the defendants' position that the prescriptive period for PNB's revocatory action against them commenced on the date the act of donation was recorded in the public records, the defendants point to the factually similar case of Allied Shipyard Inc. v. Edgett, XXXX-XXXX (La.App. 4th Cir.2/11/04), 868 So.2d 189, writ granted, XXXX-XXXX (La.4/23/04), 870 So.2d 281. In that case, Allied Shipyard, the creditor, filed a revocatory action against the Edgetts, seeking to set aside a donation of their home to their daughter. The Edgetts filed a peremptory exception raising the objection of prescription, which the trial court granted and the appellate court affirmed, because the revocatory action was filed more than one year from the time the act of donation was recorded in the conveyance records. Thus, the court concluded that the one-year prescriptive period set forth in La. C.C. art. 2041 was triggered when the act of donation was filed in the conveyance recordsor, in other words, the date the act of donation was filed in the conveyance records was the date when the obligee knew or should have known of the act, which allegedly created or increased the insolvency of the obligor.
However, the public records doctrine does not impute knowledge of the contents of the public records to third persons, but instead provides that no written instrument affecting immovable property shall be binding on or affect third persons "unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated." La. R.S. 9:2721(A). In Phillips v. Parker, 483 So.2d 972 (La.1986), the supreme court stated:
The fundamental principle of the law of registry is that any sale, mortgage, privilege, contract or judgment affecting immovable property, which is required to be recorded, is utterly null and void as to third persons unless recorded. When the law of recordation applies, an interest in immovable property is effective against third persons only if it is recorded; if the interest is not recorded, it is not effective against third persons, even if the third person knows of the claim....
Thus, the law of registry does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. The essence of the public records doctrine is that recordation is an essential element for the effectiveness of a right, and it is important to distinguish between effectiveness of a right against third persons and knowledge of a right by third persons. An unrecorded interest is not effective against anyone (except the parties). A recorded interest, however, is effective both against those third persons who have knowledge and those who do not have knowledge of the presence of the interest in the public records. From the standpoint of the operation of the public records doctrine, knowledge is an irrelevant consideration. Any theory of constructive knowledge which imputes knowledge of the contents of the public records to third persons forms no part of the public records doctrine.
Phillips, 483 So.2d at 975-76 (footnotes and citations omitted).
Thus, the public records doctrine is essentially a negative doctrine, declaring that what is not recorded is not effective except between the parties, and that a *15 third party in purchasing, or otherwise dealing with immovable property, is entitled to rely on the absence from the public records of any unrecorded interest in the property. Williams v. Williams, 2003-2089 (La.App. 1st Cir.6/25/04), 886 So.2d 478, 481, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 596.
Since the public records doctrine allows the parties to rely on the absence of documents in the public records and does not impute knowledge of the contents of the public records to third persons, the public records doctrine cannot be used to charge an obligee (creditor) with constructive knowledge of documents in the public records for purposes of determining whether he knew or should have known of the act so as to commence the prescriptive period under La. C.C. art. 2041. Accordingly, under the facts of this case, we decline to find that the time of the filing of the act of donation in the conveyance records was the date when PNB knew or should have known of the act of donation, so as to commence the prescriptive period on its revocatory action.
Accordingly, we must determine, based on the record before us, the time when PNB first learned or should have learned of the act, thus triggering the start of the one-year prescriptive period set forth in La. C.C. art. 2041. Other than the defendants' contention that prescription began to run on March 4, 2002 (the date the act of donation was recorded in the conveyance records), the defendants have neither suggested any other date nor offered any other evidence as to when PNB first learned or should have learned of the act of donation.
Nonetheless, PNB contends that it first learned or should have learned of the act of donation (which increased James Wilks' insolvency) on April 28, 2003, when James Wilks testified at the judgment debtor examination that he had no assets. However, in paragraph 4 of PNB's petition, it admits that on "January 16, 2003, [it] discovered that James Wilks executed the act of donation on March 2, 2002." Therefore, based on the record before us, we find that prescription began to run on January 16, 2003the date PNB admitted in its petition that it learned of the act of donation. The present revocatory action was filed on June 26, 2003, well within the one-year prescriptive period. Accordingly, the judgment of the trial court granting summary judgment in favor of the defendants on the issue of prescription is hereby reversed.

REVOCATORY ACTION
In accordance with the clear language of La. C.C. art. 2036, in order for an obligee to annul an act of the obligor, he must show (1) an act (or failure to act) of the obligor that causes or increases the obligor's insolvency; and (2) the act must occur after the obligee's rights arose. See Lewis v. Hood, 97-2118 (La.App. 1st Cir.11/6/98), 721 So.2d 1078, 1080. Additionally, the jurisprudence requires that the obligee must prove prejudice, injury, or damage to the obligee as a result of the act. See First Federal Savings & Loan Assoc. of Lake Charles v. Jones, 620 So.2d 408, 411 (La.App. 3rd Cir.), writ denied, 629 So.2d 347 (La.1993); Premier Bank, National Assoc. v. Stout, 627 So.2d 188, 191 (La.App. 3rd Cir.1993); In Re Goldberg, 277 B.R. 251, 283 (Bankr. M.D.La.2002). See also Thomassie v. Savoie, 581 So.2d 1031 (La.App. 1st Cir.), writ denied, 589 So.2d 493 (La.1991); Martin Lebreton Insurance Agency v. Phillips, 364 So.2d 1032 (La.1978); Franklin Press Inc. v. National Diversified Corp., 286 So.2d 469 (La.App. 1st Cir. 1973), writ denied, 289 So.2d 155 (La.1974). The test for determining prejudice *16 or injury is factual, based on the value of the property and the ranking of the indebtedness. Central Business Forms, Inc. v. N-Sure Systems, Inc., 540 So.2d 1029, 1034 (La.App. 2nd Cir.1989). If preferred claims against the property exceed its value, the donation should not be revoked because it does not injure or prejudice an unsecured creditor. Id.
In its motion for summary judgment, PNB contended that there were no genuine issues of material fact as to any of the elements of its revocatory action, and therefore, it was entitled to judgment as a matter of law, revoking the donation of the two parcels of property and returning them to the patrimony of James Wilks. In support of its motion for summary judgment, PNB submitted the affidavit of its attorney who attended the April 28, 2003 judgment debtor examination. According to his affidavit, James Wilks testified under oath that he had no assets other than his wristwatch. Additionally, in the defendants' answer to the revocatory action, the defendants admitted that James Wilks incurred the charges on the PNB credit card prior to March 2, 2002.[9] Lastly, as both parties have submitted copies of the act of donation, neither party disputes that James Wilks and Jacquelyn Nata donated their interest in the College Street residence and the Central Park Subdivision property to their daughter, Shelly Wilks, on March 2, 2002.[10]
Based on our de novo review of the evidence that was submitted by PNB on the motion for summary judgment, we find there is no genuine issue of material fact that (1) the March 2, 2002 act of donation caused or increased the insolvency of James Wilks and (2) this act of donation occurred after PNB's rights arose. However, we find the evidence submitted was insufficient to satisfy PNB's burden of showing that there is no genuine issue of material fact as to one of the essential elements of its revocatory actionspecifically, whether PNB was prejudiced, injured, or damaged by the act of donationso as to preclude summary judgment in its favor.

CONCLUSION
Having found that PNB's revocatory action was not prescribed, we reverse the judgment of the trial court granting the summary judgment in favor of the defendants on the basis that it was prescribed. We further find that there are genuine issues of material fact as to whether PNB was prejudiced, injured, or damaged by James Wilks and Jacquelyn Nata's act of donation of property to their daughter, and therefore, we find no error in the trial court's apparent denial of PNB's motion for summary judgment.
All costs of this appeal are assessed against the defendants, James A. Wilks, Jacquelyn Nata, and Shelly Wilks.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] These two parcels of property actually consist of seven lots of land. The Central Park Subdivision property is comprised of six, twenty-five feet by one hundred twenty-five feet, contiguous lots on which a mobile home residence is located.
[2] PNB's petition, paragraph 4, alleges PNB discovered James Wilks executed the act of donation on January 16, 2003; PNB's memorandum in support of its motion for summary judgment, page 4, section 3, states the judgment debtor examination was set for April 28, 2003; the affidavit of Patrick Reso (submitted by PNB in support of its motion for summary judgment) references the judgment debtor examination held on April 28, 2003; defendants' memorandum in support of its motion for summary judgment, page 2, subsection II, states James Wilks told PNB about the act of donation at the January 16, 2003 judgment debtor examination; and PNB's memorandum in opposition to defendants' motion for summary judgment, page 2, subsection I, states that PNB did not know of the harm caused by the act of donation until the judgment debtor examination "in January of this year [2003]" and then refers to the affidavit of Patrick Reso referencing the judgment debtor examination held on April 28, 2003.
[3] Malise Prieto, Clerk of Court for St. Tammany Parish, was also named as a defendant.
[4] We note that PNB's motion for summary judgment was not addressed by the judgment of the trial court. When a judgment is silent as to a claim or demand, it is presumed that the trier of fact denied the relief sought. See Caro v. Caro, 95-0173 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 520. Accordingly, we conclude that the trial court denied PNB's motion for summary judgment.
[5] Pursuant to PNB's request, the trial court issued written reasons for judgment which stated: "This Court accepts the argument made by the defendants, both in written and in oral form, and adopts that argument for prescription as its own."
[6] The denial of PNB's motion for summary judgment would generally be a non-appealable interlocutory judgment. La. C.C.P. arts. 968 and 2083. However, it may be reviewed on an appeal of a final judgment in the suit. See People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752, 753 (1968); Devers v. Southern University, 97-0259 (La.App. 1st Cir.4/8/98), 712 So.2d 199, 209. In this case, since the trial court's judgment disposed of all the relief prayed for by the parties, it is a final judgment. See La. C.C.P. art. 1841. Therefore, it is appropriate for this court to review the trial court's ruling that denied PNB's motion for summary judgment in reviewing the trial court's judgment that granted the defendants' motion for summary judgment. See Board of Trustees of State Employees Group Benefits Program v. St. Landry Parish School Board, XXXX-XXXX (La.App. 1st Cir.2/14/03), 844 So.2d 90, 95, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 404; Industrial Indemnity Co. of the Northwest v. Central Nat'l Ins. Co. of Omaha, 99-2535 (La.App. 1st Cir.12/22/00), 775 So.2d 1246, 1250; cf., CITGO Petroleum Corp. v. State, ex rel. Dep't of Revenue and Taxation, XXXX-XXXX (La.App. 1st Cir.4/2/03), 845 So.2d 558, 563 n. 8, writ denied, XXXX-XXXX (La.6/27/03), 847 So.2d 1274.
[7] In Doe, this Court noted that, although prescription is typically raised through the peremptory exception, the defense of prescription may also be properly raised by motion for summary judgment. Doe, 857 So.2d at 557. In making this determination, this Court further noted that the procedural propriety of a motion for summary judgment to assert a plea of prescription has never been questioned by our courts, but rather, has been expressly approved, especially when there is no dispute as to the facts upon which the defense is based. Thus, in Doe, because the disputed issue was one of law, rather than material fact, this Court found the use of summary judgment particularly appropriate and preferable to the use of the peremptory exception from an evidentiary standpoint. Doe, 857 So.2d at 557 n. 3. In this case, the disputed issue of prescription is likewise one of law rather than material fact, and hence, the use of summary judgment to raise the issue of prescription was appropriate.
[8] However, we note that when prescription is raised by a peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription would be subject to the manifest error-clearly wrong standard of review. Carter v. Haygood, XXXX-XXXX (La.1/19/05), 892 So.2d 1261, 1267.
[9] Any admissions on file can be considered by the court in deciding a motion for summary judgment. See La. C.C.P. art. 966(B).
[10] See Boland v. West Feliciana Parish Police Jury, XXXX-XXXX (La.App. 1st Cir.6/25/04), 878 So.2d 808, 814, writ denied, 2004-2286 (La.11/24/04), 888 So.2d 231, noting that although La. C.C.P. arts. 966 and 967 do not permit a party to use unsworn and unverified documents as summary judgment evidence, if both parties offer identical copies of documents, indicating that there is an agreement between them as to their authenticity, the court may accept them.