952 So.2d 731 (2007)
Kathleen TRIVETTE
v.
STATE of Louisiana, OFFICE OF GROUP BENEFITS.
No. 2005 CA 2245.
Court of Appeal of Louisiana, First Circuit.
January 24, 2007.
J. Arthur Smith, III, Rebecca E. May-Ricks, Baton Rouge, Counsel for Plaintiff/Appellee Kathleen Trivette.
Stanley K. Hurder, Pamela M. Perkins, Pamela B. Rice, Baton Rouge, Counsel for Defendant/Appellant State of Louisiana, Office of Group Benefits.
*732 Before: PARRO, KUHN, GUIDRY, GAIDRY and McCLENDON, JJ.
McCLENDON, J.
This matter involves the proper interpretation of a statute regarding employer contributions to the state health insurance program. For the reasons that follow, we reverse the declaratory judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
The facts of this matter are not in dispute. The matter was submitted to the trial court on a stipulation of facts, and the following are some of those to which the parties agreed. The Office of Group Benefits (OGB) is a state agency established and governed by LSA-R.S. 42:801, et seq. The primary function of the OGB is to provide group health and life benefit coverage to eligible active and retired state and public school employees. The plaintiff, Kathleen Trivette, has been employed by the state since June 3, 1974, except for a period from February 10, 1978, through July 16, 1979. From the time of her initial employment by the state through March 1, 1978, Mrs. Trivette maintained group health insurance coverage with the OGB. On August 1, 1979, Mrs. Trivette resumed her health insurance coverage through the OGB health plan, and was continuously enrolled until February of 1984. At that time, Mrs. Trivette changed to a private health insurance plan through her husband's employment, and continued to be covered by his private health insurance plan until July 1, 2003. Following her husband's retirement, Mrs. Trivette re-enrolled in the OGB health plan, effective July 1, 2003. Since that time, Mrs. Trivette has been continuously enrolled in the OGB plan.
The parties further stipulated that Mrs. Trivette was not an enrolled member of the OGB health plan in December 2001; that in 2001, Act 1178 implemented recommendations of the Governor's Task Force on health care costs; and that on September 13, 2003, Mrs. Trivette and her husband filed an administrative appeal with the OGB regarding its interpretation of LSA-R.S. 42:851, as it applied to Mrs. Trivette.[1]
In her administrative appeal, Mrs. Trivette contended that because she had participated in the OGB health insurance plan before January 1, 2002, as provided in the new statute, she does not fit within the new variable tiered system of employer contributions to a retiree's health insurance premiums based upon years of participation. Rather, she argues that she is entitled to the maximum 75% contribution of premiums by the state, as previously provided prior to the enactment of Act 1178. The OGB disagreed and denied the Trivettes' administrative appeal. In responding to the appeal, the Administrative Claims Committee of the OGB interpreted LSA-R.S. 42:851, with its implementing rule, to allow only those participants who enrolled effective December 1, 2001, or earlier, and who maintained continuous coverage, to receive 75% of their retiree health insurance premiums.[2]
*733 On April 29, 2004, Mrs. Trivette filed suit against the OGB seeking a declaratory judgment that based on the plain language of LSA-R.S. 42:851, the interpretation of the statute by the OGB is incorrect and that the variable tiered structure of the statute does not apply to her.[3] A bench trial was held on May 17, 2005, after which the trial court issued oral reasons for judgment, agreeing with Mrs. Trivette and concluding that the provisions of LSA-R.S. 42:851(E)(1) do not apply to her. Judgment was signed on August 5, 2005, and the OGB filed a suspensive appeal.

DISCUSSION
The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360, p. 3 (La.12/3/03), 860 So.2d 1112, 1115.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9.[4] However, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. When the language is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. Lasyone v. Phares, 01-1785, pp. 3-4 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068, 1071, writ denied, 02-1711 (La.10/14/02), 827 So.2d 423.
When interpreting a law, the court should give it the meaning the lawmaker intended. It will not be presumed that the legislature intended for any part or provision of the law to be meaningless or useless. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. The meaning of a statute is to be interpreted by looking to all the sections taken together, so that no section, clause, sentence or word becomes superfluous or meaningless. Barrilleaux v. NPC, Inc., 98-0728, p. 4 (La.App. 1 Cir. 4/1/99), 730 So.2d 1062, 1064-65, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672.
In 2001, the Louisiana legislature enacted Act 1178, effective June 29, 2001, which reorganized the state group health plan. The act implemented the recommendations of the Governor's Task Force in an effort to control spiraling health care costs. One of the provisions of the act, LSA-R.S. 42:851(E)(1), sets forth a new system of cost sharing between the state and the employee upon retirement. The statute provides as follows:

*734 E. (1) Notwithstanding any other provision of this Part to the contrary, for any person who is an active employee as defined by R.S. 42:808 and who does not participate in the Office of Group Benefits program provided by this Part before January 1, 2002, but subsequently enrolls in the program, or for any person who is hired on or after January 1, 2002, who meets the definition of employee as provided by Subsection F of this Section the state contribution of the total premium shall, upon retirement, be:
(a) Nineteen percent for those persons with less than ten years of participation in the Office of Group Benefits program before retirement.
(b) Thirty-eight percent for those persons with ten years of participation but less than fifteen years of participation in the Office of Group Benefits program before retirement.
(c) Fifty-six percent for those persons with fifteen years of participation but less than twenty years of participation in the Office of Group Benefits program before retirement.
(d) Seventy-five percent for those persons with twenty or more years of participation in the Office of Group Benefits program before retirement.[5]
In this appeal, Mrs. Trivette asserts that LSA-R.S. 42:851(E)(1) authorizes her to be "grandfathered" into the previous system so that she retains the privilege of receiving the highest level, or 75%, of retiree health insurance premium contributions, since she was a participant before January 1, 2002. Mrs. Trivette contends that the phrase "who does not participate in the Office of Group Benefits program provided by this Part before January 1, 2002" in the statute keeps her out of the new tiered system because she clearly did participate in the program before January 1, 2002. On the other hand, OGB also asserts that the language of LSA-R.S. 42:851(E)(1) is clear, but to properly interpret the statute, the phrase "who does not participate in the Office of Group Benefits program provided by this Part before January 1, 2002" must be read together with the phrase "but subsequently enrolls in the program." According to the OGB, although Mrs. Trivette was a participant in the past, she enrolled after January 1, 2002, and therefore under the statute "subsequently enroll[ed]." The OGB contends that the tiered system set forth in LSA-R.S. 42:851(E)(1), which bases the percentage of premiums paid by the state on the number of years of participation in the group health plan, clearly applies to Mrs. Trivette because she enrolled effective July 1, 2003.[6]
Looking to all the subsections of LSA-R.S. 42:851(E)(1) taken together so that no section, clause, sentence or word becomes superfluous or meaningless, and giving effect to each word and provision, we agree with the OGB. A reasonable reading of the statute requires the interpretation that the legislature intended to include both active employees who were not participating in the OGB health plan as of December 31, 2001, as well as new employees hired on or after January 1, 2002, in its new tiered system of determining employer contributions to retiree health premiums. Thus, these two categories of employees included in the tiered system of LSA-R.S. 42:851(E)(1) cannot be grandfathered *735 in and must show years of participation in the state program to determine the state's contribution toward their retiree health premium.[7] If the statute is given the interpretation requested by Mrs. Trivette, it would allow an employee, who had been a participant in the OGB plan at some point in time prior to January 1, 2002, to wait until shortly before retirement to re-enroll and thereby avoid paying years of premiums into the system. Such an interpretation would render the legislation meaningless and useless and be in direct contravention of the intent of the legislature.
Therefore, because it is presumed the legislature acts with full knowledge of well-settled principles of statutory construction, that every word, sentence and provision in a statute was intended to serve some useful purpose, that some effect be given to each such provision, and that the legislature used no unnecessary words or provisions, we hold that the trial court erred in determining that Mrs. Trivette does not fall within the tiered system as provided in LSA-R.S. 42:851(E)(1). Accordingly, the OGB is required to contribute to Mrs. Trivette's health insurance premiums, upon retirement, in accordance with the number of years of participation as provided for in LSA-R.S. 42:851(E)(1).[8]

CONCLUSION
The judgment of the trial court finding that the tiered system of determining employer contributions to retiree health premiums, as provided for in LSA-R.S. 42:851(E)(1), does not apply to Mrs. Trivette, is hereby reversed. Accordingly, the state will contribute to Mrs. Trivette's retiree health care premiums based upon the total number of years of her participation in the OGB health plan. Mrs. Trivette shall bear the costs of this appeal.
REVERSED AND RENDERED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
At issue in this case is whether La. R.S. 42:851 applies to restrict the percentage of the total premium the state contributes to Mrs. Trivette's retirement health coverage. The applicable portion of the statute provides, "[n]otwithstanding any other provision of this Part to the contrary, for any person who is an active employee . . . and who does not participate in the Office of Group Benefits program provided by this Part before January 1, 2002, but subsequently enrolls in the program . . . the state contribution of the total premium shall, upon retirement, be. . . ."
*736 The record shows that Mrs. Trivette participated in the Office of Group Benefits program for approximately eight years out of the thirty years she was employed by the State at the time the law was enacted. Considering this evidence and relying solely on the plain and unambiguous language of the statute itself, it is clear that the phrase "who does not participate in the Office of Group Benefits program provided by this Part before January 1, 2002," does not apply to Mrs. Trivette, who had participated in the program prior to January 1, 2002. Mrs. Trivette had been enrolled prior to January 1, 2002, and she subsequently re-enrolled after that date.
Mrs. Trivette relied on the plain wording of the statute in making decisions regarding what unquestionably is a significant and essential aspect of her future welfare. While the majority overwhelmingly emphasizes the intent of the legislature in amending the statute and the underlying policy reasons triggering the passage of the amendment to justify its interpretation of the amended statute, it fails to give effect to the plain language of the statute on which Mrs. Trivette relied. Therefore, to the extent that the majority's opinion fails to properly interpret the clear and unambiguous language of the statute, I respectfully dissent.
NOTES
[1] The Trivettes had previously requested an opinion from the OGB regarding her eligibility to receive "grandfather" status and the related 75% health insurance premium contribution by the state upon retirement. The Trivettes were informed that Mrs. Trivette was not eligible for the grandfather status as she was not enrolled on January 1, 2002.
[2] Thus, at trial, the parties made the additional stipulation that the OGB interprets LSA-R.S. 42:851 to require a state employee, with less than twenty years of OGB participation, who was covered by the OGB health plan before January 1, 2002, to "maintain continuous coverage through retirement" in order to receive the 75% state contribution toward the premium for retiree coverage.
[3] We note that although Mrs. Trivette's prayer for relief requests a declaratory judgment determining that LSA-R.S. 42:851(E)(1) applies to her, the body of her petition indicates that she does not believe that it applies in her situation, and we therefore consider the prayer to contain a typographical error.
[4] Similarly, LSA-R.S. 1:4 provides:

When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
[5] By Acts 2005, 1st Ex.Sess., No. 57, § 1, eff. Dec. 6, 2005, LSA-R.S. 42:851(E)(1) was amended to substitute "R.S. 42:808" for "Subsection F of this Section."
[6] Therefore, according to the OGB, the state would contribute 38% of Mrs. Trivette's total health plan premium and Mrs. Trivette would contribute the remaining 62%.
[7] We note that state employees who were not participating in the OGB health plan before January 1, 2002, were given an opportunity to join the OGB plan to become grandfathered in. The parties stipulated that Mrs. Trivette received a notice in which she was advised:

Interested potential plan members have a window of opportunity to enroll in Group Benefits in time to be grandfathered, so that they, too, can obtain the maximum state subsidy.
In order to be enrolled by December 31, 2001, potential participants must submit enrollment forms to Group Benefits by the close of business on November 14, 2001. . . . "
[8] We need not address the argument by the OGB regarding its implementing rule or the doctrine of contemporaneous construction. We also note that an administrative construction cannot have weight where it is contrary to or inconsistent with the statute. See Board of Trustees of State Employees Group Benefits Program v. St. Landry Parish Bd., 02-0393, p. 18 (La.App. 1 Cir. 2/14/03), 844 So.2d 90, 100, writ denied, 03-0770 (La.5/9/03), 843 So.2d 404.